UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| 165 PARK ROW, INC., d/b/a THE BRUNSWICK INN, </br></br>       Plaintiff </br></br> v. </br></br> JHR DEVELOPMENT, LLC, and MAINE AND NOBLE, LLC, </br></br>       Defendants | ) ) ) ) ) ) ) ) ) ) ) ) )   No. 2:12-cv-106-NT |

*MEMORANDUM DECISION ON MOTION TO EXCLUDE*

The defendants, citing Fed. R. Civ. P. 37(c)(1), move to exclude from the summary judgment record the declarations of nine witnesses offered by the plaintiff on the issue of secondary meaning in this case alleging trademark infringement.[1] The defendants contend that these witnesses were not disclosed during discovery and, therefore, may not provide factual testimony for purposes of summary judgment. Defendants' Motion to Exclude Declarations of Witnesses Who Were Not Identified Until After Discovery Deadline ("Motion") (ECF No. 41) at 1. I grant the defendants' motion in part.

Discovery closed in this action on October 12, 2012. ECF No. 14. The defendants filed their motion for summary judgment on December 13, 2012. ECF No. 26. The plaintiff filed its opposition to the motion on January 14, 2013, accompanied by a statement of material facts and nine affidavits from witnesses who the defendants contend were not previously identified by the plaintiff. ECF No. 35.

---

[1] Oral argument on the motion was held before me on February 12, 2013.

1

In interrogatories served on the plaintiff on June 26, 2012, the defendants asked the plaintiff, *inter alia*:

> [3.] Please state the facts in support of your contention, in Paragraph 13 of the Complaint, that the "mark THE BRUNSWICK INN has . . . obtained secondary meaning."
>
> * * *
>
> [9.] Please identify each person whom you expect to call as a witness at the trial of this matter or to otherwise provide written or oral testimony, and as to each such witness, state the subject matter on which the witness is expected to testify and the substance of the facts as to which the witness is expected to testify. . . .

Plaintiff's Answers to Defendants' First Set of Interrogatories ("Interrogatory Answers") (ECF No. 30-4) at 3, 14.

In addition, Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires each party to provide to all other parties, "without awaiting a discovery request," the name, address, and telephone number of "each individual likely to have discoverable information[.]"  That disclosure must be supplemented "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process[.]"  Fed. R. Civ. P. 26(e)(1)(A).

Finally, Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

## I.  Discussion

### A.  Procedural Issue

The plaintiff contends that this motion is "procedurally unsound," because this court's Local Rule 26(b) prohibits the filing of discovery motions without prior court approval, which

was not sought by the defendants.  Plaintiff's Opposition to Defendants' Motion to Exclude Declarations of Witnesses Who Were Not Identified Until After Discovery Deadline ("Opposition") (ECF No. 44) at 3.  This interpretation of the local rule, which is entitled "Discovery," is misplaced.  The discovery deadline in this case expired on October 12, 2012.  The instant motion was filed on January 16, 2013.  Evidentiary disputes that arise after discovery has closed, particularly after a motion for summary judgment has been filed, are not properly characterized as discovery disputes.  The local rule does not apply to such disputes when they arise after discovery has ended.

The only authority cited by the plaintiff in support of its position on this issue, *Wheeler v. Olympia Sports Ctr., Inc.*, No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004), is inapposite.  In that case, the discovery violation upon which the moving party relied had been committed during the discovery period, but the moving party had chosen to wait until discovery had closed and her opponent had filed a motion for summary judgment before bringing the alleged violation to the court's attention.  *Id.* at *1-*2.  In the instant case, defense counsel had no way of knowing that the plaintiff would rely on testimony of previously undisclosed witnesses to oppose their motion for summary judgment until post-discovery motion practice ensued.

Indeed, the plaintiff argues here that, since it did not decide to use this testimony until after the defendants filed their motion for summary judgment, it had no obligation to disclose the existence of these witnesses until it made that decision.  Opposition at 4.  It adds that it "began to identify specific consumers willing and able to provide testimony to respond to the Defendants' allegations of a lack of secondary meaning" only on January 4, 2013.  *Id.* at 5.  Thus, the defendants could not have known about the plaintiff's use of these witnesses, or even, in most

3

cases, their existence, before discovery closed. For that reason, *Wheeler* is easily distinguishable.

### B. Seven Witnesses

The plaintiff admits that it did not inform the defendants of the names or any other information about seven of the nine witnesses at issue before appending their sworn declarations to its opposition to the defendants' motion for summary judgment. Opposition at 1. These witnesses are C. Bruce Bagwell, Andrea Brewer, Lisa Buthley, Judy Casey, Sally Clifford, Maureen Prohl, and Susan Goldberg. Motion at 2; Opposition at 2; ECF Nos. 35-1 through 35-9 (declarations).

The plaintiff explains this omission by contending that it has "no obligation to disclose the names of individuals it might use as declarants" before its attorneys began to formulate a response to the motion for summary judgment. Opposition at 4-5. Were this an accurate interpretation of Rules 26 and 37, all plaintiffs could merely wait until their opponents filed motions for summary judgment, and then surprise them by filling in any evidentiary gaps identified in the motions with sworn statements from witnesses of whom the defendants had previously been unaware.[2] This would mark a return to the trial by ambush that the rules of civil procedure were designed to eradicate.

In addition, the remedy proposed by the plaintiff – allowing the defendants to depose the nine declarants—would require the re-opening of discovery, additional delay, and most probably the filing of a new motion for summary judgment. This court issues scheduling orders and expects litigants to comply with them so that it can remain in control of its docket and caseload.

---

[2] The plaintiff's observation that "[t]he Defendants failed to plead a lack of secondary meaning as an affirmative defense[,]" Opposition at 5 n.1, has no bearing on the issue before the court. Secondary meaning is an element of the claim that the plaintiff has raised in this case, not an affirmative defense. *See, e.g., Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 548 (4th Cir. 2004); *Monster Cable Prods., Inc. v. Avalanche Corp.*, No. C-08-4792 MMC, 2009 WL 650369, at *2 (N.D. Cal. Mar. 11, 2009).

To allow any plaintiff to cause such additional delays by late identification of fact witnesses upon whose testimony it relies, whether with respect to a motion for summary judgment or a trial, would eviscerate the scheduling order, ceding control of the docket to plaintiff's counsel and only to plaintiff's counsel.  As the First Circuit has observed:

> The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence, the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules.

*Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992).

Of the case law cited by the parties, the most instructive for present purposes is *Harriman v. Hancock County*, 627 F.3d 22 (1st Cir. 2010).  In that case, more than two months after discovery had closed and two days before the plaintiff's response to the defendants' motion for summary judgment was due, the plaintiff's attorney sent the defendants a "supplemental" disclosure listing two additional individuals likely to have discoverable information.  *Id.* at 27.  Two days later, he filed an opposition to the motion for summary judgment, "which drew heavily from the . . . affidavits [of the two new witnesses]." *Id.*

The plaintiff's attorney had not retained the private investigator who located these witnesses until 10 days before dispositive motions were due and more than a month after the close of discovery.  *Id.*  The magistrate judge granted the defendants' motion to strike the affidavits.  *Id.*  The First Circuit upheld the preclusion of the affidavits.  *Id.* at 32.  In reaching its decision, the court listed the factors that must be addressed:  the sanctioned party's justification for the late disclosure; the opponent's ability to overcome its adverse effects; the history of the litigation; the impact of the late disclosure on the district court's docket; and the sanctioned party's need for the precluded evidence.  *Id.* at 30.

5

Like the *Harriman* plaintiff, the plaintiff's justification for the late disclosure in this case is nonexistent. *Id*. Its assertion that it was not required to disclose the existence of these individuals and their proposed testimony earlier – let alone begin to "identify" them before the close of discovery—is incorrect and without legal foundation. The plaintiff here had to know, early on, that evidence of secondary meaning was necessary to its claim.

Again, as in *Harriman*, the late disclosure

> was not a harmless inconvenience. The defendants prepared and filed a summary judgment motion premised on evidence submitted before the discovery deadline. [The plaintiff] opposed the motion with affidavits obtained after that deadline, from witnesses whom [it] had not provided the defendants an opportunity to depose. [T]he prejudice to defendants was real.

*Id*. at 31.

As to the third factor enumerated in *Harriman*, the history of the litigation in this case favors neither side of this dispute. Generally, discovery has been conducted with a minimum of delay.

I have already mentioned the impact on the court's docket of the late disclosure. "District courts have an interest in managing their dockets without such disruptions." *Id*.

Finally, as in *Harriman*, the only factor that favors the plaintiff is its need for the affidavits. *Id*. at 32. "Reversals based on a sanctioned party's need for precluded evidence are rare, and seldom based on that factor alone." *Id*. In the instant case, as in *Harriman*, precluding the seven declarations "does not obviously or automatically result in dismissal" of the plaintiff's case. *Id.* The plaintiff does not claim otherwise. Opposition at 8.[3]

---

[3] It is for this reason that *Joyce v. Postmaster General*, 846 F.Supp.2d 268 (D. Me. 2012), and *Officemax, Inc. v. Sousa*, 773 F.Supp.2d 190 (D. Me. 2011), are inapposite. Both involved situations in which the exclusion sought would necessarily result in the entry of judgment against the party opposing the motion to exclude. Counsel for the plaintiff agreed at oral argument that exclusion of the declarations in this case would not necessarily result in the entry of summary judgment for the defendants.

Whether the declarants' identities and testimony fall under one or more of the interrogatories quoted above or are controlled only by Rule 26, the result is the same. The defendants' motion is granted as to the seven listed declarants.

### C.  Betsey Alden

The plaintiff contends that the defendants "knew of" declarant Alden and that this knowledge constituted sufficient disclosure, because the plaintiff provided the defendants with a copy of a letter to the editor "from Betsey Alden regarding The Brunswick Inn that ran in the [] Times Record."  Opposition at 4.  As the defendants point out, however, that letter was only produced after the discovery deadline, and its subject has nothing to do with the substance of Alden's declaration.  Reply at 2; Second Declaration of James G. Goggin (ECF No. 44-1) ¶¶ 5-6.  *Compare* ECF No. 44-3 (letter) *with* Declaration of Betsey Alden (ECF No. 35-2).

The plaintiff cites *Rooney v. Sprague Energy Corp.*, 519 F.Supp.2d 110 (D. Me. 2007), in support of its assertion that "[i]t elevates procedure over substance for Defendants, having knowledge of [this] consumer[], to now seek to exclude [her] declaration[]."  Opposition at 4.  However, in *Rooney*, the court held that "[b]y making [the plaintiff] aware of [the witness], his position at [the corporate defendant], and his involvement in the case, [the defendant] disclosed at the deposition what would have been disclosed in the initial disclosure."  519 F.Supp.2d at 116.  Alden's letter to the editor disclosed none of this information, with the exception of the fact of her existence.  That letter does not disclose what would have been required to be disclosed about Alden in the plaintiff's initial disclosures or a supplement thereto.  The letter gives the defendants no indication that Alden has knowledge about secondary meaning or any other issue relevant to this case.[4]

---

[4] In addition, unlike the situation in *Rooney*, in this case the court knows that the defendants asked, in their Interrogatory No. 9, for information about witnesses whom the plaintiff was likely to call to testify.

7

The motion to exclude Alden's declaration is granted.

### D.  Jan Routh

The plaintiff makes the same argument as to Routh as it made with respect to Alden.  The defendants point out, Motion at 2, that the only reference to Routh in the plaintiff's responses to their interrogatories was the following entry in a long list of incidences of alleged confusion about the names of the plaintiff's and the defendants' establishments:

> 1/20[/12] – Jan and Cliff Routh party – after telling all the swimming parents that the dinner was at The Brunswick Inn, "not the new hotel," about a dozen went up to The Inn at Brunswick Station.

Interrogatory Answers at 9.  The defendants assert that this information "did not provide Defendants with any reasonable basis to predict her testimony on the issue of secondary meaning[.]"  Motion at 3.

However, the information does bear some resemblance to the statements made in Routh's declaration.  *See* ECF No. 35-4.  Routh does not refer specifically to the January 20, 2012, incident in her declaration, but both the Routh portion of the interrogatory response and the Routh declaration can be construed to address secondary meaning.  The Routh declaration, therefore, presents a closer question than does the Alden declaration, despite the plaintiff's election to treat them equally in its opposition to the pending motion.

I reiterate that the mere fact that the defendants "knew of" the declarants before the plaintiff used them as witnesses in its response to the motion for summary judgment is not, as the plaintiff would have it, sufficient to absolve the plaintiff of its duties under Rule 26 and, more generally, not to engage in litigation by ambush.  The facts in this instance come sufficiently close to those in *Rooney*, however, to lead me to conclude that this "disclosure" was sufficient,

8

although barely, to allow the plaintiff to rely on the Routh declaration in its opposition to the motion for summary judgment.

## II. Conclusion

For the foregoing reasons, the defendants' motion to exclude the declarations of the nine listed individuals from the summary judgment record is **GRANTED** as to all declarants other than Jan Routh, and **DENIED** as to the declaration of Jan Routh.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 20th day of February, 2013

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge