*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| ***165 PARK ROW, INC., d/b/a THE*** | ) |
| ***BRUNSWICK INN,*** | ) |
| | ) |
| ***Plaintiff*** | ) |
| | ) |
| ***v.*** | )    ***No. 2:12-cv-106-NT*** |
| | ) |
| ***JHR DEVELOPMENT, LLC and*** | ) |
| ***MAINE AND NOBLE, LLC,*** | ) |
| | ) |
| ***Defendants*** | ) |

***RECOMMENDED DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT***

The defendants in this trademark action, JHR Development, LLC, and Maine and Noble,

LLC, move for summary judgment on all counts of the complaint. Maine and Noble also moves

for summary judgment on its counterclaim. I recommend that the court deny the motion.

**I.  Applicable Legal Standard**

**A.  Fed. R. Civ. P. 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence

about the fact is such that a reasonable jury could resolve the point in the favor of the non-

moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30

(1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A

fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting

*Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

1

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each

supported by a specific record citation.  *See id.*  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id.*

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II.  Factual Background

The parties have submitted two sets of stipulated facts as well as individual statements of material facts and responses thereto.  The following material facts are undisputed.

The plaintiff operates an inn called "The Brunswick Inn," and Maine and Noble operates an inn called the "Inn at Brunswick Station."  Stipulated Facts for Defendants' Motion for Summary Judgment on All Claims Against Them, and for Maine & Noble's Motion for Summary Judgment on Its Counterclaim ("Stipulated Facts I") (ECF No. 29) ¶ 1.  The Brunswick Inn is a lodging establishment operated in an historic 1848 federal-style residence in

Brunswick, Maine. *Id*. ¶ 2. The inn has 13 available guest rooms, and has at times had up to 15 rooms available to the public. *Id*. The plaintiff began using the name "The Brunswick Inn" on May 22, 2009. *Id*. The previous owner had operated the property as an inn called "the Brunswick Inn on Park Row" or "the Inn on Park Row." *Id*. ¶ 3.

The Inn at Brunswick Station opened for business on June 28, 2011. *Id*. ¶ 4. It is a newly-constructed 52-room lodging establishment located within a mixed-use development called "Brunswick Station," in Brunswick, Maine. *Id*. Maine and Noble has used the name the "Inn at Brunswick Station" to refer to the establishment since it opened. *Id*. Maine and Noble owns the properties within Brunswick Station. Statement of Additional Material Facts in Support of Defendants' Motion for Summary Judgment on All Claims Against Them, and In Support of Maine & Noble's Motion for Summary Judgment on Its Counterclaim ("Defendants' SMF") (ECF No. 28-5) ¶ 1; Plaintiff's Opposing Statement of Additional Material Facts ("Plaintiff's Responsive SMF") (ECF No. 35) ¶ 1. A separate entity, JHR Development of Maine, LLC, is the manager of Maine and Noble and the developer of Brunswick Station. *Id*.

"The Brunswick Inn" is not registered as a trademark with the United States Patent and Trademark Office. Stipulated Facts I ¶ 5. Since May 2009, the plaintiff has maintained the domain name "brunswickbnb.com," as well as the domain name "thebrunswickinn.com." *Id*. ¶ 8. There is a hotel in Southport, North Carolina, called "The Brunswick Inn." *Id*. ¶ 16.

The plaintiff's inn is operated out of a house and, on the same property, a free-standing apartment unit the plaintiff calls the "Garden Cottage." *Id*. ¶ 17. The plaintiff has between eight and twelve employees, depending on the season. *Id*.

In March 2012, the plaintiff applied to the Maine Secretary of State, pursuant to 10 M.R.S.A. § 1521 *et seq.*, to register the mark "The Brunswick Inn." *Id.* ¶ 23. The application was granted on or about March 27, 2012. *Id.*

The Brunswick Inn is a boutique inn offering a quaint New England inn experience. Statement of Additional Material Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment on All Claims Against Them and Maine & Noble's Motion for Summary Judgment on Its Counterclaim ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 6) ¶ 1; Reply Statement of Material Facts ("Defendants' Responsive SMF") (ECF No. 53) ¶ 1. The Brunswick Inn has a bar with limited food service that is open to the public. *Id.* ¶ 11.

On one occasion, the Brunswick Fire Department mistakenly came to The Brunswick Inn in response to a call related to the Inn at Brunswick Station. *Id.* ¶ 15.

### III. Discussion

### A. Plaintiff's Claims

The five-count complaint asserts federal claims for declaratory judgment, trademark infringement, and unfair competition and state claims for unfair competition and dilution. First Amended Complaint ("Complaint") (ECF No. 6) ¶¶ 27-49.

### 1. Unfair Competition (Count III)

The defendants begin with an attack on Count III of the plaintiff's complaint. Memorandum of Law in Support of Defendants' Motion for Summary Judgment on All Claims Against Them, and in Support of Maine & Noble's Motion for Summary Judgment on Its Counterclaim ("Motion") (ECF No. 26) at 3. The claim is brought under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Id.*; Plaintiff's Opposition to Defendants' Motion for

Summary Judgment on All Claims Against Them and on Defendant Maine & Noble's Motion

for Summary Judgment on Its Counterclaim ("Opposition") (ECF No. 34) at 3.

> A senior user of an unregistered mark prevails on a claim of trademark infringement pursuant to the Lanham Act upon demonstrating that (i) its mark is inherently distinctive, or, if merely descriptive, has acquired distinctiveness through secondary meaning and (ii) there is a substantial likelihood of confusion.

*Benchmark v. Benchmark Builders, Inc.*, No. CIV.00-151-PH, 2000 WL 1886570, at *3 (D. Me.

Dec. 29, 2000) (citation omitted).[1]

> A court's inquiry into whether a term merits trademark protection starts with the classification of that term along the spectrum of "distinctiveness." At one end of the spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected. . . . At the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning. These terms are considered "inherently distinctive."

*Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993)

(citations omitted).

The plaintiff concedes that the mark at issue is descriptive. Motion at 5. Therefore, the

plaintiff must prove that "The Brunswick Inn" has acquired distinctiveness through secondary

meaning.[2] In determining whether a term has acquired secondary meaning, the First Circuit

directs trial courts to consider three factors: "(1) the length and manner of its use, (2) the nature

and extent of advertising and promotion of the mark and (3) the efforts made in the direction of

promoting a conscious connection, in the public's mind, between the name or mark and a

---

[1] "The Brunswick Inn" is not a mark registered with the United States Patent and Trademark Office. Motion at 4 n.4.

[2] A name has achieved secondary meaning when "a significant quantity of the consuming public understand the name as referring exclusively to the appropriate party." *President & Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804, 807 (1st Cir. 1975).

particular product or venture." *Boston Beer*, 9 F.3d at 182 (citation omitted). Secondary meaning is a question of fact on which the plaintiff bears the burden of proof. *Id*. at 180, 181.

The defendants contend that "The Brunswick Inn" has not achieved secondary meaning. Motion at 10-20. They begin by asserting that the plaintiff must prove that "The Brunswick Inn" had achieved secondary meaning before the defendants began using the name "The Inn at Brunswick Station" on or about June 28, 2011. *Id*. at 10. They cite no authority in support of this argument. The plaintiff responds that "the First Circuit has not adopted" this rule, Opposition at 13, but the First Circuit also has not rejected it, making it entirely possible for this court to apply the rule.

The United States District Court for the District of Massachusetts has adopted the rule. *I.P. Lund Trading ApS v. Kohler Co*., 118 F.Supp.2d 92, 104 (D. Mass. 2000) (citing case law from the Second, Third, Fourth, and Federal Circuits). The rule is mentioned in *DeCosta v. Viacom Intern'l, Inc.*, 981 F.2d 602 (1st Cir. 1992), but the parties disagree over the import of that reference. In a discussion of the priority of competing marks, the First Circuit cited, *inter alia*, an opinion of the Third Circuit, quoting the following language and adding the emphasis shown:

> Priority depends not upon which mark succeeds in first obtaining secondary meaning but upon whether the plaintiff can prove by a preponderance of the evidence that his mark possessed secondary meaning [and, we add, that there was a potential likelihood of confusion] *at the time the defendant commenced his use of the mark.*

*Id*. at 612 (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978)).

The First Circuit's citation is for the purpose of defining priority between and among marks, but its logic, particularly with the emphasis it provided, applies as well to the question of

7

secondary meaning itself.  A leading treatise on trademark law takes this position.  *Gilson on Trademarks* § 2.09[4] (2012) ("[T]he plaintiff asserting rights in an inherently nondistinctive word or trade dress must prove that secondary meaning was established *prior to the time* the defendant started using the allegedly infringing trademark or trade dress." (Emphasis in original)).  I see no reason why this court should not adopt it as well.

The plaintiff may establish the existence of a secondary meaning for "The Brunswick Inn" at the relevant time through direct or circumstantial evidence.  *Gilson* § 2.09[6].  Direct evidence consists of consumer survey results or testimony from individual consumers.  *Id*.  In this case, no consumer survey has been conducted, but the plaintiff asserts that it has "presented substantial direct evidence that 'The Brunswick Inn' has achieved secondary meaning" through the testimony of nine affiants.  Opposition at 8.

However, the declarations of eight of those individuals have been excluded from the summary judgment record as a result of my ruling (ECF No. 51) on the defendants' motion (ECF No. 41) to exclude the declarations of those witnesses.  The only one of these declarations remaining in the summary judgment record is that of Jan Gorman Routh (ECF No. 35-4). Ms., Routh states, in relevant part: "When I hear The Brunswick Inn or Brunswick and inn, I think of The Brunswick Inn, located at 165 Park Row, Brunswick, Maine.  I do not think of any other inn or lodging establishment."  Declaration of Jan Gorman Routh ("Routh Decl.") ¶ 5.

This statement by a single individual is insufficient to establish secondary meaning by direct evidence.  *Gilson* § 2.09[6][a].

With respect to circumstantial evidence of secondary meaning, the plaintiff offers six arguments: that it has produced evidence of actual consumer confusion; that its use of "The Brunswick Inn" has been sufficiently long and exclusive; that it has "enjoyed substantial

unsolicited media coverage"; that it has advertised "the Brunswick Inn" extensively; that it "is a successful and prominent business within the greater Brunswick community"; and that the defendants intentionally copied the name with an intent to pass off their services as those of the plaintiff.  Opposition at 9-25.  I will address these assertions in the order presented by the plaintiff.

### a.  Actual Consumer Confusion

The plaintiff asserts that "actual confusion is strong evidence of secondary meaning." *Id*. at 9 (citation and internal quotation marks omitted).  But it again relies on the testimony in the excluded declarations to support its contention that it has "put forth substantial evidence of actual consumer confusion."  *Id*.[3]  It also offers "a list of approximately 180 instances of actual consumer confusion that have occurred between mid-July 2011 and December 31, 2012."  *Id*.

As the defendants point out, Defendants' Reply Memorandum for Summary Judgment Motions ("Reply") (ECF No. 52) at 5 & n.5, evidence from this time frame necessarily postdates the point at which the plaintiff must demonstrate that secondary meaning existed, as discussed above.  However, the First Circuit has suggested that evidence of actual confusion is some evidence of secondary meaning, *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 45 (1st Cir. 2001), although it does not characterize such evidence as "strong."  Therefore, this court should consider it in combination with other factors that the First Circuit has explicitly recognized as elements of proof of secondary meaning.

---

[3] Also, summary judgment practice in this court requires that citations to the record be to the parties' statements of material facts rather than to the documents supporting those statements.  Only facts properly presented in this manner will be considered in connection with motions for summary judgment.  *E.g., Vertrue Inc. v. Graham*, Docket No. 06-135-P-S; 2007 WL 2071792, at *6 n.5 (D. Me. July 17, 2007); *Sengel v. Anderson/Kelly Assoc's, Inc.*, No. 03-251-P-S, 2004 WL 1576699, at * 6 (D. Me. July 14, 2004).

The evidence of consumer confusion properly placed before this court by the plaintiff is found in its citation to paragraph 13 of its statement of material facts, Opposition at 9,[4] as limited by my previously-mentioned exclusion of most of the declarations cited in support of that paragraph. Only the Hornor and Routh declarations are available to the plaintiff as support for paragraph 13. The Routh declaration does not support the specific factual assertion about actual consumer confusion for which the plaintiff cites it. *Compare* Routh Decl. ¶¶ 7-8 *with* Opposition at 9.

The plaintiff's claim of 180 instances of actual consumer confusion is based on the Horner declaration. Opposition at 9. The defendants take the position that the majority of these instances are in fact examples of "reverse confusion," that is, where the defendants' use of a disputed mark causes consumers to associate the plaintiff's goods or services with the defendants. Motion at 19-20 & n.14; Reply at 4-6. Some case law suggests that reverse confusion serves only as limited evidence of secondary meaning. *E.g., A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 233-34 (3d Cir. 2000); *Charter Nat'l Bank & Trust v. Charter One Financial, Inc.*, No. 01 C 0905, 2001 WL 1035721 at *5 (N.D. Ill. Sept. 4, 2001).

However, the defendants' list of instances of reverse confusion, Affidavit of Frank N. Gaeta (ECF No. 28-4) Exh. 1, does not include 60 instances of confusion alleged by the plaintiff. That is enough to provide some evidence in support of the plaintiff's summary judgment position

---

[4] The defendants deny this paragraph of the plaintiff's statement of material facts, Defendants' Responsive SMF ¶ 13, but the denial does not actually contradict those factual assertions included in that paragraph that are properly before the court. Rather, the defendants apparently take the position that Hornor is not qualified to make the factual representations in her declaration. *Id.* The declaration states that it is made upon personal knowledge. Declaration of Eileen B. Hornor ("Hornor Decl.") (ECF No. 36) ¶ 1. In the absence of a request to strike the cited paragraph or any other actionable objection, I take that sworn statement at face value.

given the standard to be applied to evidence proffered by the non-moving party in the summary judgment context, although it would be insufficient standing alone.

### b. Length of Use and Exclusivity

Length and manner of use of the mark at issue is "[a]mong the factors this court generally looks to in determining whether a term has acquired secondary meaning[.]"  *Boston Beer,* 9 F.3d at 182.   The defendants contend that the approximately two years between May 22, 2009, when the plaintiff began using the name "The Brunswick Inn," and June 28, 2011, when the defendants began using the name "The Inn at Brunswick Station," are insufficient as a matter of law to provide any evidence of secondary meaning.  Motion at 10-14.

However, no specific number of years of use, standing alone, has been held in the reported case law to be definitive on this point.  Even the case law cited by the defendants makes this clear.  *See, e.g., Ja-Ber Trading Co. v. Novelty, Inc.*, No. 97-299-P-C, 1999 WL 33117184, at *3 (D. Me. Jan. 25, 1999) (no single factor determinative in assessing existence of secondary meaning); *Black & Decker Corp. v. Dunsford*, 944 F.Supp. 220, 226 (S.D.N.Y. 1996).   As the plaintiff points out, Opposition at 12-16, other courts have found secondary meaning where the length of use, considered as one of many factors, was as brief as two years or less.  *E.g., L. A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1130 (Fed. Cir. 1993) (5 months); *Tools USA & Equipment Co. v. Champ Frame Straightening Equipment, Inc.*, 87 F.3d 654, 660 (4th Cir. 1996) (three years); *White Swan, Ltd. v. Clyde Robin Seed Co.*, 729 F. Supp. 1257, 1261-62 (N.D. Cal. 1989) (two years).

The defendants go on to argue that the property at issue was called "The Brunswick Bed & Breakfast" from October 1984 through January 1, 2007, and "The Brunswick Inn on Park Row" or "The Inn on Park Row" until May 20, 2009, and that such successive use of different

names "weighs against a finding of secondary meaning." Motion at 11.[5]   However, the only

authority they cite, *Charter Nat'l Bank & Trust*, concerns a plaintiff which had itself used three

different names over a period of 15 years.  Here, the plaintiff asserts that it has only used one

name, the name at issue, since the property changed ownership.  Stipulated Facts I ¶¶ 2-3.  This

argument adds little weight to the defendants' motion.

The defendants next contend that "people still associate the names 'The Brunswick Bed

& Breakfast' and 'The Brunswick Inn on Park Row' with the Plaintiff's inn" because the

plaintiff's listing in the telephone directory for Brunswick in 2011-2013 is for "Brunswick Inn on

Park Row," and there is no separate listing for "The Brunswick Inn."  Motion at 12.  This says

nothing about "The Brunswick Bed & Breakfast" and in any event seems to apply to the

exclusivity factor rather than length of use.[6]

The plaintiff offers only the following evidence with respect to exclusivity, choosing

instead to devote its effort to refuting the defendants' presentation on the point: (1) it has relied

"almost exclusively" on the name "The Brunswick Inn" when referring to or promoting the

property since it purchased the property in 2009, citing paragraphs 17-20 of its statement of

material facts; (2) the sign outside the inn states that it is "The Brunswick Inn," citing paragraph

18 of its statement of material facts; (3) it uses only the name "The Brunswick Inn" on its

stationery and all materials placed in guest rooms, citing paragraphs 19-20 of its statement of

material facts; and (4) it uses only the name "The Brunswick Inn" in all purchased print

advertisements, citing paragraph 17 of its statement of material facts.  Opposition at 14.

---

[5] In addition, of the factual assertions made by the defendants in support of this argument, only the facts that the most recent seller used the name "The Brunswick Inn on Park Row" before selling the property to the plaintiff in 2009, and the plaintiff's use of the name "The Brunswick Inn" thereafter are properly before the court.

[6] The remaining factual allegations in this paragraph of the defendants' motion are not supported by proper citations to the summary judgment record.

The defendants proffer properly supported evidence that: (1) since May 2009, the plaintiff has maintained the domain name "brunswickbnb.com" in addition to the domain name "thebrunswickinn.com," Motion at 13-14, citing Stipulated Facts I ¶ 8; (2) it used the domain name "brunswickbnb.com" in promotional material in September, 2011, *id*. ¶ 9 & Exh. 7; (3) this domain name appears in an "item" about The Brunswick Inn in the May/June issue of Yankee Magazine, *id*. ¶ 10; and (4) other entities use the words "Brunswick" or "inn" to identify their lodging establishments, *id*. ¶¶ 11-15 & Exhs. 9-17.

Neither of these dueling lists trumps the other. Given the standard applicable to the non-moving party's supported factual allegations in the summary judgment context, this issue does not support the defendants' motion.

### c.  Large or Prominent Enterprise

The defendants contend that "[t]he cases in which a mark has been found to have secondary meaning generally involve much larger enterprises[]" than the plaintiff's inn. Motion at 14-15. They assert that The Brunswick Inn was not large enough or prominent enough before the relevant date to allow the conclusion that a substantial portion of the consuming public had come to associate the name with its business. *Id*. at 15. The only reasonable inference to draw from the size of The Brunswick Inn, they claim, is that its name has no secondary meaning. *Id*.

The plaintiff apparently means to respond to this factor in the section of its opposition entitled "The Brunswick Inn is a Successful and Prominent Business Within the Greater Brunswick Community." Opposition at 21-23. The plaintiff defines this factor as consisting of sales success and general prominence. Opposition at 21-22. The authority it cites for including these factors in the secondary meaning calculus supports its reliance on sales success. *Ja-Ber*, 1999 WL 33117184, at *3.

However, the facts proffered by both parties on this issue are insufficient.  The plaintiff recites its gross revenues for 2010 and 2011 and asserts, in conclusory fashion, that they "are sufficient to establish secondary meaning when considered in the context of the boutique lodging market in the Greater Brunswick area."  Opposition at 21-22.  That conclusion cannot be drawn in the absence of comparative evidence of gross revenues for similar facilities in that area.  The plaintiff does point out that the defendants' comparison of the gross revenues of its inn to those of the plaintiff, Motion at 17, is inappropriate.  The plaintiff appropriately compares the revenues per room of each facility.  Opposition at 22.  However, neither set of figures establishes sales success or enterprise prominence.

The defendants also criticize the plaintiff's occupancy rate, but cite no authority to support their suggestion that this is a valid measure of "sales success," particularly in the absence of comparable data for comparable facilities.   In addition, their proffered evidence of the occupancy rate of the facility before the plaintiff acquired it is not properly presented in the summary judgment record.

This factor aids neither party in the summary judgment process.

### d.  Advertising or Promotion

The defendants next argue that the plaintiff has not "extensively" advertised or promoted the name at issue.  Motion at 15-17.   As they acknowledge, *id*. at 15-16, this criterion alone is not determinative of secondary meaning.  They calculate, based on Exhibit 19 to the parties' joint stipulations, that the plaintiff spent an insufficient amount on advertising and promotion during the relevant two-year period.  *Id*. at 16.  In language remarkably similar to that used in their preceding argument, the defendants assert that "[c]ases in which secondary meaning has

been inferred in part from advertising have involved much more extensive promotional efforts" than these. *Id.*

Of course, this assertion says nothing about the relative size of the enterprises involved in the advertising and promotion. It stands to reason that a 52-bed lodging establishment will spend more on advertising and promotion than will a 13-bed lodging establishment. *See White Swan,* 729 F.Supp. at 1262.

The plaintiff counters that its advertising efforts "have reached thousands and thousands of consumers['']" Opposition at 18, but none of the evidence that it cites in support of this assertion is properly presented in the summary judgment record. *Id*. at 18-19.

On the showings made, neither side of this dispute benefits from this element of the test for secondary meaning.

### e. Unsolicited Media Coverage

The defendants assert that the plaintiff's evidence of unsolicited media coverage is "of scant probative value" because it has not provided evidence of how many consumers were reached by this coverage. Motion at 18. The plaintiff attempts to remedy this situation in its response, but, again, that evidence is not properly presented in the summary judgment record. Opposition at 17. Its only citation to a statement of material facts is made in support of the statement that the business "was featured in at least two television segments that aired on widely broadcast television stations." *Id*.; Plaintiff's SMF ¶ 32.

Again, standing alone, the plaintiff's submission on this factor would not be enough to withstand summary judgment, but it must be considered together with all of the other factors.

**f.  Intentional Copying**

Evidence of intentional copying is probative of secondary meaning.  *Yankee Candle*, 259 F.3d at 43-44.  The defendants assert that there is no evidence that they "had any intention to pass off their services as those of the Plaintiff[,]" and add that the name of their inn was chosen "at the suggestion of a hotel management company."  Motion at 18.  The plaintiff responds, while agreeing with the defendants' definition of the term, that the evidence supports an inference that the defendants intentionally copied its name.  Opposition at 23-25.[7]

The first evidence of intentional copying proffered by the plaintiff is that the defendants' principal stayed at The Brunswick Inn "on multiple occasions" during the development of the defendants' inn.  *Id*. at 23.[8]  However indulgently construed, this fact cannot reasonably be said to support an inference of intentional copying.  Mere knowledge of the existence of a mark does not equate to intent to copy it.  *DeGidio v. West Group Corp*., 355 F.3d 506, 514  (6th Cir. 2004).  The next evidence cited by the plaintiff is the fact that "The Inn at Brunswick Station" was not the first choice for the name of their inn.  Opposition at 24.  Again, an inference drawn from this fact to the effect that the name was intentionally copied would not be reasonable.

Next, the plaintiff contends that intentional copying is demonstrated by the fact that an employee of the defendants "voiced concerns regarding the similarity" of the two names.  *Id*.  The "concerns" of a single individual provide no more reasonable a basis for the inference

---

[7] The defendants object to all of the plaintiff's factual allegations with respect to intentional copying , contending that these facts "contradict the sworn deposition testimony" of Ms. Horner, who, when asked "Is – is it 165 Park Row's position in this case that the defendants intentionally copied any portion of the name The Brunswick Inn?" , answered, "Copied it?  I have no idea."  Reply at 10.  There is no contradiction between this answer and evidence that would demonstrate such copying.

[8] The one proper citation given in support of this factual assertion in the plaintiff's opposition is to paragraph 39 of its statement of material facts.  Opposition at 23.  The plaintiff apparently meant to cite paragraph 37 of its statement of material facts.

16

pressed by the plaintiff[9] than does the fact that the defendants first considered, but did not adopt, a different name.  Similarly, the fact that the defendants' inn has "52 rooms, a full restaurant and a large event space," *id.*, does not support an inference of intentional copying.  Many lodging establishments of a similar size across the nation use the word "inn" in their names.

The plaintiff cites one more instance that it contends provides evidence of intentional copying, *id.*, but that information is not properly a part of the summary judgment record.

The plaintiff draws no support for its position from this factor.

### g.  Conclusion re Count III

The plaintiff's burden of proof with respect to secondary meaning "entails vigorous evidentiary requirements."  *Boston Beer*, 9 F.3d at 181 (citation omitted).  The plaintiff in this case has presented evidence of three of the six factors discussed by the parties as elements of proof of secondary meaning.[10]  Ordinarily, with the benefit of the summary judgment standard favoring the non-moving party's inferences from the undisputed facts, this would be sufficient to bar summary judgment.  The "vigorous evidentiary requirements" standard gives me pause, however.

The plaintiff says that secondary meaning "need only be established by a preponderance of the evidence."  Opposition at 7.  Both of the district court opinions that it cites for this proposition do recite such a standard for proof of secondary meaning, *Beacon Mut. Ins. Co. v. OneBeacon Ins. Corp.*, 376 F.Supp.2d 251, 256 (D.R.I. 2005), and *I.P. Lund*, 118 F.Supp.2d at 104, but neither opinion mentions the "vigorous evidentiary requirements" standard which the First Circuit stated in *Boston Beer, Yankee Candle*, and most recently in *Flynn v. AK Peters, Ltd.*,

---

[9] Again, the plaintiff cites paragraph 39 of its statement of material facts in support of this factual assertion, but it apparently meant to refer to paragraph 38.

[10] The plaintiff asserts that its registration of the name "The Brunswick Inn" with the Maine Secretary of State effective March 27, 2012, two days before this action was filed, ECF No. 1, "raises a presumption of validity." Opposition at 9 n.4.  Given the proximity of the dates, any such presumption is not a very strong one.

377 F.3d 13, 20 (1st Cir. 2004).  Careful reading of these opinions convinces me that the First Circuit referred to the breadth of the evidentiary requirements to prove secondary meaning rather than any higher or more vigorous standard of proof.

Accordingly, although the question is a close one, I conclude that the defendants are not entitled to summary judgment on Count III.

### 2.  Count IV

Count IV of the First Amended Complaint alleges unfair competition under Maine state law, specifically 10 M.R.S.A. § 1212.  Complaint ¶¶ 43-46.  This claim also requires proof of secondary meaning, and the parties apparently agree that the same legal standards apply.  Motion at 20-21; Opposition at 26.  Indeed, the plaintiff has submitted no argument specific to any claims other than Count III and the counterclaim.

I recommend that the motion for summary judgment as to Count IV be denied.

### 3.  Count II

Count II of the First Amended Complaint alleges trademark infringement under Maine state law.  Complaint ¶¶ 33-38.  The defendants contend that, under the state statute invoked, 10 M.R.S.A. § 1529(1), the plaintiff's mark "is not registrable" because it has not attained secondary meaning, despite the fact that the Maine secretary of state has in fact registered it. Motion at 21-22.   Because it has not yet been established in this action that "The Brunswick Inn" has not attained secondary meaning, the defendants are not entitled to summary judgment on this claim.

### 4.  Count V

Count V of the First Amended Complaint alleges dilution of its mark under Maine state law.  Complaint ¶¶ 47-49.  The anti-dilution statute, 10 M.R.S.A. § 1530, apparently has not

been construed by the Maine courts. The plaintiff does not dispute the defendants' contention that proof of dilution under this statute requires proof of the existence of secondary meaning, Motion at 22, and my conclusions on that issue are thus equally applicable to this claim. The defendants' motion for summary judgment on this claim should be denied.

### 5. Count I

Count I of the First Amended Complaint seeks declaratory relief "concerning superior rights to use a mark combining the words 'Brunswick' and 'inn.'" Complaint ¶ 32. This claim is derivative of the other claims. The defendants make no argument for summary judgment on this claim independent of their arguments concerning the other claims, and the same result should obtain. I recommend that the motion for summary judgment as to Count I be denied.

### B. Maine and Noble, LLC's Counterclaim

Defendant Maine and Noble, LLC also seeks summary judgment on its counterclaim against the plaintiff. Motion at 23-24. The counterclaim seeks cancellation of the plaintiff's registration of "The Brunswick Inn" with the Maine secretary of state. Counterclaim (beginning at page 5 of Answer and Counterclaim of JHR Development, LLC and Maine and Noble, LLC (ECF No. 9)) ¶¶ 14-16. Again, both sides of this particular dispute agree that the central question is whether the plaintiff's use of "The Brunswick Inn" has attained secondary meaning. Motion at 24; Opposition at 27. That matter is still in dispute, and, therefore, summary judgment is not warranted.[11]

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **DENIED**.

---

[11] Maine and Noble asserts that "[t]his Court should order the Secretary of State to cancel the registration[.]" Motion at 23. Neither the State of Maine nor its secretary of state is a party to this litigation, and, therefore, I doubt that this court has the necessary jurisdiction to order the Maine secretary of state to do anything.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of May, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge