| | |
|---|---|
| 165 PARK ROW, INC.,<br>d/b/a THE BRUNSWICK INN,<br><br>Plaintiff,<br><br>v.<br><br>JHR DEVELOPMENT, LLC and<br>MAINE AND NOBLE, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 2:12-cv-00106-NT<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER ON PLAINTIFF'S AND DEFENDANTS' CROSS MOTIONS *IN LIMINE* REGARDING CONFUSION LOG EVIDENCE

In this trademark infringement case, the parties file cross motions *in limine* to exclude (ECF No. 69) ("**Defendants' Motion**") or admit (ECF No. 77) ("**Plaintiff's Motion**") the Plaintiff's list of incidents of confusion witnessed by the Plaintiff's employees (ECF No. 77-2) (the "**Confusion List**"). The Defendant contends that the Confusion List is unreliable hearsay, and the Plaintiff asserts that the list is admissible as a business record or as the present sense impressions of its employees. For the reasons stated below, the Court **RESERVES RULING** on the Defendants' Motion and the Plaintiff's Motion.

The Confusion List is actually two documents, one entitled "Mistaken Calls—Inn at Main St. Station AKA Inn at Brunswick Station," which consists of dated entries from July 14, 2011 through August 2, 2012 (ECF No. 77-2 at 1-9), and the second entitled "Mistaken Calls beginning August 2012," which consists of dated entries from August 1, 2012 to October 10, 2012 (ECF No. 77-2 at 9-14). Eileen

Hornor, the proprietor of The Brunswick Inn, attests that she instructed her front desk staff "to record each incident of confusion between The Brunswick Inn and the Inn at Brunswick Station that they observed." Decl. of Eileen B. Hornor 2 (ECF No. 77-1) ("**Hornor Declaration**"). The entries vary. Many are about guests who called or arrived at the Brunswick Inn in error. Some involve guests who went to the Inn at Brunswick Station before being rerouted to The Brunswick Inn. A number of the entries involve service providers attempting deliveries or repairs at the wrong location. A few involve confused applicants for employment. Often the entries include quotes which reflect the guests' states of confusion.

Hearsay is an "out-of-court statement[ ] offered to prove the truth of the matter asserted." *United States v. Mehanna,* __ F.3d __, No. 12-1461, 2013 WL 5993224, at *17 (1st Cir. 2013); *see also* Fed. R. Evid. 801(c) (defining "hearsay"). The Defendant acknowledges, and the Court agrees, that the individuals who recorded the events in the Confusion List can testify about the statements that confused customers, service providers, and job applicants made to them. In most cases, the "first-level" statements made by confused visitors to the front desk staff (for instance, "I'm calling to confirm my dinner reservation") would not be offered to prove the truth of the matter asserted (that the customer *really was* calling to confirm his dinner reservation) but instead to show the customer's state of mind (that the customer was confused about where he had placed his reservation). This type of first-level statement would not constitute hearsay. *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 31 (1st Cir. 1989) (statements where customers expressed

confusion about the source of their goods were admissible because they were offered not for the truth of the matters asserted by the customers but to show their confusion); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1003-04 (2d Cir. 1997) (testimony of plaintiff's sales manager about customers' complaints not hearsay because offered to show customers' confusion not to prove truth of complaints); *Troublé v. The Wet Seal,* 179 F. Supp. 2d 291, 298-99 (anonymous statements of customers reflecting confusion as to where to buy goods not hearsay). And in the cases where the statement would be offered to prove the truth of the matter asserted—for instance, "I'm confused, I thought this was the inn where I made a reservation"—the then-existing-state-of-mind exception to the rule against hearsay, codified in Federal Rule of Evidence 803(3),[1] would apply. *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City,* 383 F.3d 110, 133 (3d Cir. 2004) (statements of customer confusion are admissible under Rule 803(3) to show customers' confused states of mind); *Fun-Damental Too, Ltd.*, 111 F.3d at 1003-04 (same); *CCBN.com, Inc., v. c.call.com, Inc.*, 73 F. Supp. 2d 106, 113 (D. Mass. 1999) ("Statements of customer confusion in the trademark context fall under the 'state of mind exception' to the hearsay rule."). Accordingly, there are no hearsay-within-hearsay issues which bar the admission of the Confusion List.

---

[1]    Rule 803(3) allows admission of:

A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Fed. R. Evid. 803(3).

The Plaintiff's first argument for admissibility of the Confusion List is that the front desk clerks' annotations (the "second-level" statements) of instances of customer confusion are admissible as a business record. Under the business records exception to the rule against hearsay—codified in Federal Rule of Evidence 803(6)—a record that constitutes hearsay is nonetheless admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The Plaintiff offers the declaration of Eileen Hornor in an attempt to establish the foundation for the business records exception. Hornor states:

> 3. Shortly after the Inn at Brunswick Station opened for business, the Brunswick Inn began receiving what we refer to as "mistaken calls," "mistaken deliveries," and "mistaken guests."

> 4. In order to keep each other informed of, for example, guests or deliveries that had mistakenly arrived at either The Brunswick Inn or The Inn at Brunswick Station, I instructed whomever was responsible for the front desk to begin to keep a record of the questions and mistaken inquiries we received. I instructed my staff to record each incident of confusion between The Brunswick Inn and the Inn at Brunswick Station that they observed.

> 5. We kept this log as part of our notes about phone calls, messages, deliveries and packages for guests, gifts to be delivered to rooms, service and repair that might be scheduled and other pertinent information that would keep us all informed, enable us to provide our guests with excellent service and assure a smooth transition between shifts.

4

. . .

9. The entries . . . were made at the time we received the mistaken call, delivery, or guest, [or] shortly thereafter by an employee who had personal knowledge of the event and who recorded it at the time of the event in the normal course of business.

10. It was our regular business practice to do this so we could keep each other informed of a guest who would be arriving from the Inn at Brunswick Station, or of a delivery that would be redirected to us, or a delivery that would be picked up at the Brunswick Inn and then redelivered to the Inn at Brunswick Station. It also enabled us to apologize to guests who had become confused.

Hornor Decl. ¶¶ 3-5, 9-10. Although Paragraph 5 of Hornor's declaration suggests that the Confusion List is part of a larger log kept by the front desk staff, the list provided to the court contains almost exclusively entries that relate to the confusion brought about by the existence of the Inn at Brunswick Station.

Records created by a business in anticipation of litigation do not meet the requirements of Rule 803(6). *United States v. James,* 712 F.3d 79, 89 (2d Cir. 2013) (records created in anticipation of litigation are not kept in the regular course of a business activity); *see also United States v. Razo*, No. 1:11-CR-184-JAW-01, 2013 WL 653957 (D. Me. Feb. 21, 2013) (assuming same). Although the Plaintiff claims to have created the Confusion List "to be used in the regular course of its business to facilitate communication amongst its staff responsible for the front desk and to help resolve any mis-delivered packages or mis-directed guests," Pl.'s Mot. 2, the vast majority of the entries have nothing to do with resolving mix-ups in deliveries or reservations. Most simply reflect that the mix-up occurred. Sending a person who did not have a reservation to the correct hotel requires no further action by the front

desk staff, so making a note of the mix-up can hardly be for the purpose of resolving the situation. Further, the making of the Confusion List was not a regularly conducted activity of the The Brunswick Inn until the Inn at Brunswick Station opened. Although the Plaintiff attempts to dress up the Confusion List as a routine customer service document, its fundamental character is to create a record of actual confusion for impending litigation. *See Troublé,* 179 F. Supp. 2d at 298-300 (confusion logs were not business records because they were prepared on instructions from management, "most likely to serve the purposes of [the] litigation" before the district court).

The Plaintiff's second argument for admissibility of the Confusion List is that the front desk clerks' annotations recording instances of customer confusion are also admissible under the then-existing-state-of-mind exception. *See* Fed. R. Evid. 803(3). The problem with applying Rule 803(3) to the second-level annotations made by the clerks is that the declarants (the individual clerks) were not making statements about their own state of mind or their own emotional, sensory or physical condition. They were merely commenting about external events they perceived. The Eighth Circuit explained this principal in a recent trademark case involving a similar confusion log:

> While many of the first-level statements of confusion by third parties likely satisfy the state-of-mind hearsay exception, the second-level statements by the employees who logged the incidents do not. The employees were not declaring their own state of mind in the log, but rather attempting to document the third parties' state of mind.

*First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D,* 679 F.3d 763, 768 (8th Cir. 2012).

6

Finally, the Plaintiff suggests in a footnote that the Third Circuit has sanctioned allowing entries from a confusion log into evidence under a third exception to the rule against hearsay—the present-sense impression exception, codified in Federal Rule of Evidence 803(1). Pl.'s Mot. 2 n. 1 (citing *Citizens Fin. Grp.,* 383 F.3d at 133). Rule 803(1) allows admission of "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). There are two main rationales for this exception, both related to the short duration of time between a present-sense impression statement and the event it describes: (1) that "immediacy removes the risk of lack of memory"; and (2) that immediacy "precludes time for reflection, eliminating or sharply diminishing the possibility of intentional deception." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:67 (3d ed. 2012). Properly applied, the exception "allows enough flexibility to reach statements made a moment after the fact, where a small delay . . . is not enough to allow reflection," but does not reach statements made after "[m]ore significant delays—those measured in minutes or hours, especially if the speaker has made other statements in the interim . . . ." *Id.*

The lower court in *Citizens* imposed requirements to guide the admissibility of the confusion log entries under the present-sense impression exception. To be admissible, the individual entries were required to:

> (1) "specifically mention [the alleged trademark infringer]" and (2) "describe the specific evidence of the direct link to [the alleged trademark infringer] in either the form of (a) 'documentary evidence,'

such as specifically referring to a deposit slip, or (b) 'a clear and specific statement by the customer.'"

*Citizens*, 383 F.3d at 121-22 (quoting lower court's opinion). The lower court's "guidelines also required exclusion of log entries that reflected 'the thought process, conclusion, analysis or interpretation' of the [plaintiff's] employees who recorded the entries." *Id.* (quoting lower court's opinion). In upholding the lower court's *exclusion* of log entries using these guidelines, the Third Circuit concluded that the guidelines conformed to Rule 803(1) and commented that evidence of actual confusion "collected by employees of a party in a trademark action must be viewed with skepticism because it tends to be biased or self-serving." *Id.* at 122. Given the posture of *Citizens*—an unsuccessful appeal brought by the proponent of *excluded* evidence on an abuse of discretion standard—it is not clear how strongly that case supports the Plaintiff's position.

What does emerge from a closer look at Rule 803(1)'s purpose and the methodology adopted by the lower court in *Citizens* is that determinations about the admissibility of the Confusion List under the present-sense impression exception must be made entry by entry. To show that a particular entry in the log falls under Rule 803(1), the Plaintiff must establish that the entry was made by the declarant immediately after interacting with a confused customer, before the clerk had time to "analy[ze] or "interpret[ ]" the situation. *Citizens*, 383 F.3d at 121. Since the individual entries do not bear the initials of the notating clerk, and since Hornor has conceded that she "corrected any typos" and "clarified things," Dep. of Eileen Hornor 74:16-17 (ECF No. 69-1, p. 7), it remains to be seen whether the Plaintiff

will be able to establish the necessary foundation for admissibility at trial of any entry under this exception. Further, any conclusions made by the Plaintiff's employee that went beyond describing or explaining an event would be outside the exception. *See Citizens*, 383 F.3d at 121-22. Finally, the Court would also look to the evidence rules concerning relevance and confusion in making any determination about a particular log entry's admissibility. Where the source of a visitor's confusion is unclear, the relevance of the entry diminishes and the likelihood of misleading the jurors increases.[2] Fed. R. Evid. 104(b), 401, 402, 403.

The Confusion List falls under the definition of hearsay, and neither the business records exception, Rule 803(6), nor the then-existing-state-of-mind exception, Rule 803(3), allows it to be admitted into evidence. However, it is not yet clear whether a proper foundation may be laid to allow for certain portions of the Confusion List to be entered into evidence through another exception to the rule against hearsay, such as Rule 803(1). For these reasons, the Court **RESERVES RULING** on the Defendant's Motion and the Plaintiff's Motion until trial.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 25th day of November, 2013

---

[2]     For example, one of the entries states: "Native Maine – delivered wrong food (and knocked out cable line)." Confusion List 2. This entry says nothing about confusion between The Brunswick Inn and The Inn at Brunswick Station. Similarly, an entry from the same page reports the following: "Couple came to check in. Wrong hotel." Confusion List 2. This entry does not make clear that the actual hotel the couple meant into check into was the Inn at Brunswick Station and therefore would likely be excluded under Rule 104(b), which requires "proof . . . sufficient to support a finding" of fact when "relevance of evidence depends on whether a fact exists." Fed. R. Evid. 104(b).