# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| 165 PARK ROW, INC., )<br>d/b/a THE BRUNSWICK INN, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>JHR DEVELOPMENT, LLC and )<br>MAINE AND NOBLE, LLC, )<br> )<br>Defendants. ) | Civil No. 2:12-cv-00106-NT |

**ORDER ON THE DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF SECONDARY MEANING FROM AFTER JUNE 28, 2011**

Before the Court in this trademark infringement case is the Defendants' motion in limine to exclude evidence of the advertising, unsolicited media coverage, sales success, and prominence of "The Brunswick Inn" from after June 28, 2011, the date the Defendant began operating a business under the "Inn at Brunswick Station" name ("**Defs.' Mot.**") (ECF No. 70). For the reasons stated below, the Court **DENIES** the motion.

**FACTUAL BACKGROUND**

The Plaintiff, 165 Park Row, Inc., and the Defendants, JHR Development, LLC and Maine and Noble, LLC, operate competing inns in Brunswick, Maine. The Plaintiff began operating its inn under the name "The Brunswick Inn" on May 22, 2009. The Defendants have operated their inn under the name the "Inn at

Brunswick Station" since June 28, 2011.[1] After the Defendants opened their inn, the Plaintiff filed this suit under state and federal law, alleging trademark infringement, unfair competition, and dilution of the Plaintiff's mark. Pl.'s First Am. Compl. 4-8 (ECF No. 6).

## LEGAL BACKGROUND

A plaintiff bringing a trademark infringement claim must prove two elements: (1) that the mark in question is "entitled to trademark protection"; and (2) that "the allegedly infringing use" of another mark "is likely to cause consumer confusion." *Bose Corp. v. Ejaz*, 732 F.3d 17, 26 (1st Cir. 2013) (internal citations and quotation marks omitted). Unlike a mark that is "inherently distinctive," like "Victoria's Secret," a mark that is merely "descriptive," like "Boston Beer Company," is entitled to trademark protection only if it has "secondary meaning." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 426 n.7 (2003) (regarding "Victoria's Secret"); *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175 (1st Cir. 1993) (regarding "Boston Beer Company"). A descriptive mark achieves "secondary meaning" when "a significant quantity of the consuming public understand [the] name as referring exclusively" to one entity's products or services. *President & Trs. of Colby Coll. v. Colby Coll.-N.H.*, 508 F.2d 804, 807 (1st Cir. 1975).

When determining whether a "descriptive" mark has achieved "secondary meaning," a district court should consider at least three factors:

---

[1] These facts, which are undisputed, are recited in this Court's earlier order denying the Defendants' motion for summary judgment. *See 165 Park Row, Inc. v. JHR Development, LLC*, No. 2:12-cv-00106-NT, 2013 WL 4519425, at *2-3 (D. Me. Aug. 26, 2013) (also available at ECF Nos. 55 and 58).

(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture.

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir. 1987); (internal quotation marks and citations omitted); *accord Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir. 2004).

Only if a descriptive mark has achieved "secondary meaning" does the Court then determine whether the alleged infringer's mark is "likely to cause consumer confusion." *See Boston Beer Co.*, 9 F.3d at 180. In making this determination, a district court should consider eight factors, known as the *Pignons* factors:

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Dorpan, S.L. v. Hotel Meliá, Inc.*, 728 F.3d 55, 65 (1st Cir. 2013) (internal citations omitted); *accord Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981).

## DISCUSSION

Because the name "The Brunswick Inn" is likely "descriptive" rather than "inherently distinctive," "secondary meaning" is a critical issue in this case. The Defendants contend that the Court should adopt a rule requiring the Plaintiff to demonstrate that its mark achieved secondary meaning before the Defendants

3

began using their allegedly infringing mark. Defs.' Mot. 1. At an earlier stage of this case, the Defendant explained the logic behind its proposed rule:

> Before a descriptive mark has attained secondary meaning, it is not a trademark at all. . . . Therefore, if a junior user begins using its mark before the senior user's mark has attained secondary meaning, there cannot be any trademark infringement.

Defs.' Reply Mem. for Summ. J. Mots. 2 (ECF No. 52). The Defendants argue that applying this proposed rule also requires the Court to exclude from evidence "any reference to (i) advertising, (ii) unsolicited media coverage, or (iii) the sales success or prominence of The Brunswick Inn, after June 28, 2011." Defs.' Mot. 1. They contend that Federal Rule of Evidence 402, which excludes irrelevant evidence, compels this result. *See also* Fed. R. Evid. 401 (defining "relevant").

The Defendants' premise is myopic. Whether the Court adopts its proposed "secondary meaning" rule or not, the evidence in question is relevant to the other main issue in this case: whether the "allegedly infringing use is likely to cause consumer confusion." *Bose Corp.*, 732 F.3d at 26. At a minimum, evidence of the Plaintiff's post-June 28, 2011 "advertising" is relevant to the fourth *Pignon* factor, the "juxtaposition of [the parties'] advertising," and the fifth *Pignon* factor, the "classes of prospective purchasers," while evidence of the Plaintiff's post-June 28, 2011 "unsolicited media coverage" and "sales success or prominence" is relevant to the eighth *Pignon* factor, the "strength of the plaintiff's mark." *Dorpan, S.L.*, 728 F.3d at 65.

Even if the Court does adopt the Defendants' proposed "secondary meaning" rule, at least some of the post-June 28, 2011 material in question is also relevant as

4

circumstantial evidence of whether the Plaintiff's mark achieved secondary meaning before June 28, 2011. A business's reputation does not arise overnight. If a major press outlet decided to feature "The Brunswick Inn" in late 2011, that fact has at least some tendency to make it more probable that the inn had a good reputation and that, earlier in the year, "a significant quantity of the consuming public" was aware of the Plaintiff's mark and associated it exclusively with the Plaintiff's business. Fed. R. Evid. 401(a); *Colby Coll.*, 508 F.2d at 807. That is all Federal Rule of Evidence 402 requires.[2]

## CONCLUSION

For the reasons discussed above, the Court **DENIES** the Defendants' motion in limine to exclude evidence of advertising, unsolicited media coverage, sales success, and prominence of "The Brunswick Inn" from after June 28, 2011.

SO ORDERED.

/s/ Nancy Torresen<br>United States District Judge

Dated this 6th day of December, 2013

---

[2] *See also Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405 (6th Cir. 2006) (results of consumer survey conducted in 1999 and 2002 relevant to whether "secondary meaning" existed in 1992 and 1997); 2 *McCarthy on Trademarks and Unfair Competition* § 16:34 (4th ed. 2013) ("The need to prove that secondary meaning existed at some date in the past raises problems of proof . . . . For example, is a survey taken today some evidence of what was consumer recognition of an alleged mark or trade dress at a date some years in the past? The better view is to admit such evidence but give it weight appropriate to the extent that it sheds light on consumer perceptions in the past.").