# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

165 PARK ROW, INC.,          )
d/b/a THE BRUNSWICK INN,     )
                                        )
        Plaintiff,         )
                                        )   Civil No. 2:12-cv-00106-NT
v.                                 )
                                        )
JHR DEVELOPMENT, LLC and    )
MAINE AND NOBLE, LLC,      )
                                        )
        Defendants.     )

## ORDER ON DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

Before the Court in this trademark infringement case is the Defendants'
motion for judgment notwithstanding the verdict. Defs.' Mot. for J.N.O.V. (ECF No.
148). For the reasons stated below, the Court **DENIES** the motion and **ORDERS**
judgment be entered in favor of the Plaintiff in the amount of $10,000 with respect
to Counts II and III of the Plaintiff's First Amended Complaint.

## BACKGROUND

The basic facts of this case are simple. Since June 2009, the Plaintiff has
operated a small inn in a historic building at 165 Park Row, Brunswick, Maine (the
"**Plaintiff's Inn**") under the name "The Brunswick Inn."[1] In June 2011, the
Defendants opened a larger inn (the "**Defendants' Inn**") in a newly constructed
building nearby under the name "The Inn at Brunswick Station." The Plaintiff later

---

[1] For the two-and-a-half years before June 2009, previous owners operated the business under
the name "The Brunswick Inn on Park Row." For the twenty years before that, it was operated under
the name "The Brunswick Bed & Breakfast."

initiated this lawsuit, bringing a five-count complaint alleging that the Defendants had infringed the Plaintiff's trademark and therefore violated Maine's common law, three Maine statutes, and the Lanham Act. Pl.'s First. Am. Compl. (ECF No. 6).

A three-day trial was held in December of 2013. Two of the Plaintiff's five counts were submitted to a jury: Count II, the Plaintiff's state trademark infringement claim, brought under the common law of Maine and 10 M.R.S. § 1529, and Count III, the Plaintiff's Lanham Act claim, brought under 15 U.S.C. § 1125(a).

At the close of the Plaintiff's evidence, the Defendants brought a motion for a directed verdict on both of the Plaintiff's claims under Federal Rule of Civil Procedure 50(a). Defs.' Mot. for Directed Verdict (ECF No. 135). The Court reserved ruling on the motion. At the close of all the evidence, the Defendants renewed their motion. The Court again reserved ruling.

The Court instructed the jury and submitted a special verdict form to it. At the close of the jury's deliberations, the Court denied the Defendants' Rule 50(a) motion orally. The jury then returned its verdict, answering the first two questions on the special verdict form in the following manner:

1. Did the Plaintiff prove that the Plaintiff's mark, "The Brunswick Inn," acquired distinctiveness before the Defendants began using the name "The Inn at Brunswick Station"?

   ANSWER: _____Yes_____ (Yes or No)

   .   .   .

2. Did the Plaintiff prove that the Defendants used the name "The Inn at Brunswick Station" in a manner likely to confuse an appreciable number of reasonably prudent people exercising ordinary care whose behavior affects the Plaintiff's business interests?

ANSWER: _____Yes_____ (Yes or No)

Special Verdict Form 1 (ECF No. 141). These findings amounted to a determination that the Plaintiff's mark was entitled to legal protection as a trademark and that the Defendants had committed trademark infringement.

The jury was also charged with determining four further issues: (1) what actual damages, if any, the Plaintiff was entitled to; (2) whether the Defendants and the Plaintiff are in direct competition; (3) if so, what portion of the Defendants' profits, if any, the Plaintiff was entitled to as a rough measure of its uncompensated lost sales; and (4) whether the Defendants infringed the Plaintiff's trademark willfully. The jury awarded the Plaintiff $10,000 in actual damages, determined that the Plaintiff and the Defendants are in direct competition, declined to award the Plaintiff any portion of the Defendants' profits, and decided that the Defendants had not willfully infringed the Plaintiff's trademark. Special Verdict Form 2-3.

The Defendants timely filed the motion currently before the Court under Federal Rule of Civil Procedure 50(b). In it, the Defendants contend that "there was not a sufficient evidentiary basis for a reasonable jury to answer either of the first two special questions in the affirmative" and therefore seek to have the jury's verdict overturned. Defs.' Mot for J.N.O.V. 3.

## LEGAL STANDARD

"A party seeking to overturn a jury verdict faces an uphill battle." *Marcano Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162, 167 (1st Cir. 2005). The court may grant a Rule 50(b) motion "only . . . when the evidence points so strongly and

overwhelmingly in favor of the moving party that no reasonable jury could have returned a[n] [adverse] verdict . . . ." *Rivera Castillo v. Autokirey, Inc.*, 379 F.3d 4, 9 (1st Cir. 2004). The court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. *Estate of Berganzo-Colon ex rel. Berganzo v. Ambush*, 704 F.3d 33, 38 (1st Cir. 2013). In so doing, the court does not "consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 26 (1st Cir. 2012) (quoting *Wagenmann v. Adams*, 829 F.2d 196, 200 (1st Cir.1987)). The court "disregard[s] all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The review of a jury verdict under Rule 50 is "weighted toward preservation of the jury verdict." *Crowe v. Bolduc*, 334 F.3d 124, 134 (1st Cir. 2003).

## DISCUSSION

### I.  Acquired Distinctiveness

#### A.  The Governing Law

A plaintiff bringing a trademark infringement claim must prove two elements: (1) that the mark in question is entitled to trademark protection; and (2) that the allegedly infringing use of another mark is likely to confuse an appreciable number of reasonably prudent people exercising ordinary care whose behavior affects the plaintiff's business interests.[2] *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 12 (1st Cir. 2008); *Beacon Mut. Ins. Co. v. OneBeacon Ins.*

---

[2]      In general, trademark claims brought under Maine law are treated the same as trademark claims brought under the Lanham Act. *Compare* 15 U.S.C. § 1125(a) *with* 10 M.R.S. § 1529; *see also* Pl.'s Trial Br. 4 n.1 (ECF No. 105); Defs.' Mot. for Directed Verdict 2 n.1 (ECF No. 135).

*Grp.*, 376 F.3d 8, 10 (1st Cir. 2004). Unlike a mark that is "inherently distinctive," like "Victoria's Secret," a mark that is merely "descriptive," like "Boston Beer Company," is entitled to trademark protection only if it has acquired distinctiveness. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 426 n.7 (2003) (regarding "Victoria's Secret"); *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 183 (1st Cir. 1993) (regarding "Boston Beer Company").

A descriptive mark acquires distinctiveness when a substantial portion of the relevant class of consumers—that is, the class of people who buy or use, or consider buying or using the products and services in question—comes to associate the mark specifically with a particular source of products or services. *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19-21 (1st Cir. 2004); *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 42 (1st Cir. 1998); *Boston Beer Co.*, 9 F.3d at 182; *President & Trs. of Colby Coll. v. Colby Coll.-N.H.*, 508 F.2d 804, 807-808 (1st Cir. 1975). This kind of association is called "secondary meaning." *Flynn*, 377 F.3d at 19; 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:46 (4th ed. 2013). A descriptive mark has not achieved secondary meaning where, despite a degree of association between the mark and a particular source of products or services, the original meanings of the words remain dominant. *Boston Beer Co.*, 9 F.3d at 182.

To be entitled to trademark protection, the holder of a descriptive mark must establish that its mark "'possessed secondary meaning . . . at the time the defendant commenced [its] use of the mark.'" *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 612

(1st Cir. 2012) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3rd Cir. 1978); *see also* 2 McCarthy § 16:34.

A plaintiff may establish secondary meaning through direct or circumstantial evidence. There are two types of direct evidence of secondary meaning: consumer surveys and consumer testimony. *Boston Beer Co.*, 9 F.3d at 182; *Colby Coll.*, 508 F.2d at 808-809. By contrast, there are at least seven types of circumstantial evidence of secondary meaning, including: (1) the length or exclusivity of the plaintiff's use of its mark, *AK Peters, Ltd.*, 377 F.3d at 21; (2) the nature and extent of the plaintiff's advertising and promotion of its mark, *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 816 (1st Cir. 1987); (3) the size or prominence of the plaintiff's business, *Colby Coll.*, 508 F.2d at 807; (4) the plaintiff's sales success, *id.*; (5) unsolicited media coverage featuring the plaintiff's mark, *Ja-Ber Trading Co. v. Novelty, Inc.*, No. 97-299-P-C, 1999 WL 33117184, at *2 (D. Me. Jan. 25, 1999); 2 McCarthy, § 15:30 nn. 8-9; (6) efforts the plaintiff made to promote a conscious connection in the public's mind between its mark and its products and services, *Wheeler*, 814 F.2d at 816; and (7) whether another party intentionally copied the plaintiff's mark. *Ja-Ber Trading Co.*, 1999 WL 33117184, at *2; 2 McCarthy § 15:30.

## B.    Application of the Law to the Facts of this Case

Here, the Plaintiff presented evidence that both the Plaintiff's Inn and the Defendants' Inn primarily accommodate guests with some association to Bowdoin College or interest in mid-coast Maine. Accordingly, the jury reasonably could have concluded that the relevant class of consumers here is a relatively narrow one.

The Plaintiff presented at least some direct evidence that the name "The Brunswick Inn" acquired distinctiveness before June of 2011, when the Defendants began using the name "The Inn at Brunswick Station." The deposition testimony of Jan Routh, a regular customer of the Plaintiff's Inn during the period of time that the Defendants' Inn was being constructed, was read to the jury. Routh said that when she thought of "The Brunswick Inn," she thought of "The Brunswick Inn on Park Row" a "[b]ig home, inn, B&B." Pl.'s Ex. 125 at 3. As the below excerpt demonstrates, she was later asked to clarify what she meant:

> Q: So you consider the name "The Brunswick Inn on Park Row" to refer to the inn that's located at 165 Park Row?
>
> A: Yes. In addition to just "The Brunswick Inn."
>
> Q: So . . . both names, "The Brunswick Inn" and "The Brunswick Inn on Park Row," are names that you associate with the inn at 165 Park Row in Brunswick, is that right?
>
> A: I assume that's the address. I don't know what the address on Park Row is . . . I've never said it out loud until today. "The Brunswick Inn on Park Row." It's just "The Brunswick Inn."

Pl.'s Ex. 125 at 4 (quotation and capitalization modified for clarity). Though Routh's intended meaning is not crystal clear, a reasonable jury might have concluded that, during the relevant time frame, she had come to associate the name "The Brunswick Inn" exclusively with the Plaintiff's Inn, regardless of whether it was followed by the geographical descriptor "on Park Row." Likewise, a customer named David Nadeau testified at trial that he had been to the Plaintiff's Inn many times and that when he received an e-mail about a beer and wine tasting at "The Inn at Brunswick Station," he became confused and thought the event was taking place at

the Plaintiff's Inn. A reasonable jury could infer that Nadeau had formed such a strong association between the words "The Brunswick Inn" and the Plaintiff's Inn that when he saw a similar combination of words—"The Inn at Brunswick Station"—he subconsciously transposed them. A reasonable jury could also infer that similarly situated customers might make similar mistakes.

The Plaintiff also presented significant circumstantial evidence on the issue of acquired distinctiveness. First, the Plaintiff presented evidence regarding the length and exclusivity of Plaintiff's use of its mark. Eileen Hornor, the proprietor of the Plaintiff's Inn, testified that she identified her business exclusively as "The Brunswick Inn" during the two years before the Defendants opened their competing business. She also testified that the domain name "www.thebrunswickinn.com" went live shortly after she purchased the inn.

Second, the Plaintiff presented evidence regarding the nature and extent of its efforts to advertise and promote its business using its mark. Hornor testified that the Plaintiff has advertised in various Bowdoin and Maine-oriented publications for years. In support of this claim, the Plaintiff entered into evidence several advertisements it ran before June of 2011. *See, e.g.*, Pl.'s Ex. 57 (Fall 2009 Bowdoin College football program); Pl.'s Ex. 54 (2009-2010 Midcoast Symphony Orchestra program); Pl.'s Ex. 50 (2010 Maine State Music Theatre program); Pl.'s Ex. 56 (2010 Bowdoin International Music Festival program); Pl.'s Ex. 35 (Sept. 24, 2009 issue of *Maine Biz*); Pl.'s Ex. 2 (March 10, 2011 edition of *The Times Record*); Pl.'s Ex. 14 (May 2011 issue of *Maine Magazine*). The Plaintiff also entered into

evidence an account sheet itemizing over $19,000 of advertising expenses it incurred between June of 2009 and June of 2011. Pl.'s Ex. 70.

Third, the Plaintiff presented evidence regarding the prominence of its business and its sales success. For instance, Hornor testified that the Plaintiff's Inn has increased its revenue each year since she bought it, from $460,000 the last year under its previous owners' management to over $600,000 this past year. *See also* Pl.'s Ex. 71 (profit and loss statements). Hornor testified that the Plaintiff's Inn has a solid reputation under its current name and hosts many repeat guests. The evidence established that the Plaintiff's Inn stands out from its local competition as a particularly homey, quaint lodging establishment with a distinct ambience and personality, one that customers looking for a traditional New England inn experience seek out and enjoy.

Fourth, the Plaintiff presented evidence that the Plaintiff's Inn received unsolicited media coverage in the *Boston Globe* under its current name shortly after June of 2011, circumstantially indicating its mark had achieved regional renown before that date. Pl.'s Ex. 63 (November 2011 *Boston Globe* feature); *see also* Order on the Defs.' Mot. In Limine to Exclude Evidence of Secondary Meaning from after June 28, 2011 at 5 (ECF No. 124).[3]

---

[3]     The Court's December 7, 2013 order denying the Defendants' motion in limine to exclude evidence of secondary meaning from after June 2011 provided as follows:

> A business's reputation does not arise overnight. If a major press outlet decided to feature "The Brunswick Inn" in late 2011, that fact has at least some tendency to make it more probable that the inn had a good reputation and that, earlier in the year, "a significant quantity of the consuming public" was aware of the Plaintiff's mark and associated it exclusively with the Plaintiff's business.

Fifth, the Plaintiff presented evidence about additional efforts it made to promote a conscious connection in the public's mind between its mark and its business, including participating in Maine trade organizations and hosting events at the inn to draw in more local business. *See, e.g.*, Pl.'s Ex. 2 (*Times Record* ad promoting March 12, 2011 concert at the Plaintiff's Inn by "The Blues Buzzards and Friends").

Overall, the evidence presented at trial supports a conclusion that, before June of 2011, the Plaintiff's Inn was already a popular local establishment well known under the name "The Brunswick Inn." There was sufficient evidence for a reasonable jury to conclude that "The Brunswick Inn" acquired distinctiveness before the Defendants began using the name "The Inn at Brunswick Station."

## II.   Likelihood of Confusion

### A.   The Governing Law

If a jury determines that a plaintiff's mark is entitled to trademark protection, it must go on to determine whether the defendant's mark is likely to confuse an appreciable number of reasonably prudent people exercising ordinary care whose behavior affects the plaintiff's business interests.[4] *Boston Duck Tours,* 531 F.3d at 12; *Beacon*, 376 F.3d at 10; *Int'l Ass'n of Machinists v. Winship*, 103

---

Order on the Defs.' Mot. In Limine to Exclude Evidence of Secondary Meaning from after June 28, 2011 at 5 (ECF No. 124) (internal citations omitted) (quoting *Colby Coll.*, 508 F.2d at 807).

[4]    Under *Beacon*, "the type of commercial injury actionable under . . . 15 U.S.C. § 1125(a) . . . is not restricted to the loss of sales to actual and prospective buyers of the product in question." *Beacon*, 376 F.3d at 10. Instead, "[c]onfusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." *Id.*

F.3d 196, 201 (1st Cir. 1996). In making this determination, a jury is required to

balance eight factors, known as the *Pignons* factors:

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Dorpan, S.L. v. Hotel Meliá, Inc.*, 728 F.3d 55, 65 (1st Cir. 2013) (internal citations

omitted); *accord Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d

482, 487 (1st Cir. 1981). No one factor is determinative. *See Pignons*, 657 F.2d at

487.

## B. Application of the Law to the Facts of the Case

### 1. Similarity of the Marks

The Defendants sometimes refer to their business as "Inn at Brunswick

Station," without the preceding definite article "the," but their own logo identifies

the business as "The Inn at Brunswick Station." Accordingly, a reasonable jury

could have concluded that the Defendants' infringing mark is a five-word name,

"The Inn at Brunswick Station," which contains all three words in the Plaintiff's

mark, "The Brunswick Inn." A reasonable jury could have concluded that the marks

are similar.

### 2. Similarity of the Goods and Services and Relationship Between Channels of Trade

The testimony of Hornor and the Defendants' witnesses established that the

Plaintiff's Inn and the Defendants' Inn are located within short walking distance of

one another and of Bowdoin's campus, that both offer high-end lodging and event

space, that both target Bowdoin students and alumni, and that both do business with many of the same vendors. The Defendants' Inn is substantially larger and more modern than the Plaintiff's Inn, as the Defendants' Inn is newly constructed and has 52 guest rooms, while the Plaintiff's Inn was built in the mid-1800s and has just 15 guest rooms. However, the evidence also indicates that the Defendants specifically decided to call their business an "inn" instead of a "hotel" because of the homier connotations of the word "inn," that the Defendants decided to build a front porch in order to make their establishment feel more like an old-fashioned New England inn, and that the Defendants are consciously chasing after the elusive concept of "quaintness" and all that it represents. Accordingly, a reasonable jury could have concluded that the parties offer a similar service and operate along similar channels of trade.

### 3. Juxtaposition of Advertising

The Plaintiff's Inn and the Defendants' Inn run print ads in publications targeting similar audiences. In fact, the two businesses have run ads in the same issue of the same publication on at least two occasions. *See, e.g.*, Pl.'s Ex. 22 (2012 edition of *Allure of the Coast*); Defs.' Ex. 113 (Sept. 2011 issue of *Maine Magazine*). Both businesses market themselves on the internet. Richard Martin, the general manager of the Defendants' Inn, testified that the Defendants purchased Google AdWords and engaged in search engine optimization. For a time, these efforts caused "The Inn at Brunswick Station" website to appear above the Plaintiff's website when a user entered "the brunswick inn" into Google. *See also* Pl.'s Ex. 80 (print-out of Google search results).

### 4.    Classes of Prospective Purchasers

Hornor testified that rooms at the Plaintiff's Inn rent for $150 to $220 per night, that the Plaintiff's Inn specifically targets consumers with an affiliation to Bowdoin College, and that customers of the Plaintiff's Inn tend to be older than average, well-educated and affluent. Likewise, the testimony of the Defendants' witnesses established that rooms at the Defendants' Inn cost significantly more than an average hotel room, that the Defendants' Inn targets Bowdoin students and alumni, and that the Plaintiff's Inn and the Defendants' Inn attract a similar class of customers. Martin testified that whenever the Defendants' Inn is full, the first alternative his staff recommends to would-be customers is the Plaintiff's Inn. A reasonable jury could have concluded that the classes of prospective purchasers for the two businesses largely overlap.

### 5.    Evidence of Actual Confusion

Hornor and two employees of the Plaintiff's Inn, Wendy Flynn and Alane Callahan, testified to numerous instances of actual confusion between the Plaintiff's mark and the Defendants' mark. Callahan testified that confusion persists on a near daily basis. Hornor related specific details of twenty-eight different instances of confusion, including the time a guest nearly missed his flight because the taxi he had called went instead to the Defendants' Inn, the time the Brunswick Fire Department received a call about a kitchen fire at the Defendants' Inn but instead arrived at the Plaintiff's Inn, and the time a group of corporate officers visiting Brunswick for a meeting accidentally booked a conference room at the Plaintiff's Inn but lodgings at the Defendants' Inn. The Plaintiff also presented testimony

from five different members of the general public who had experienced or witnessed confusion between the parties' marks.

### 6. The Defendants' Intent

The jury expressly found that the Defendants did not willfully infringe the Plaintiff's trademark. Special Verdict Form 3. However, Hilary Rockett, the developer of the Defendants' Inn, testified that he stayed at the Plaintiff's Inn a number of times while the Defendants' Inn was being constructed. He also testified that a primary reason the Defendants decided to name their hotel "The Inn at Brunswick Station" was that they wanted their name to show up when potential guests looking for a hotel in Brunswick entered typical Google search terms. Michael Lyne, the project manager for the construction of the Defendants' Inn, testified that, during the naming process, he probably warned his superiors that customers would confuse the name "The Inn at Brunswick Station" with the name "The Brunswick Inn." Lyne favored a more distinctive name. Accordingly, consistent with its finding that the Defendants did not act willfully, this jury could have reasonably concluded that the Defendants were aware that choosing the name "The Inn at Brunswick Station" might lead to customer confusion.

### 7. Strength of the Plaintiff's Mark

The jury expressly found that the Plaintiff's mark was strong enough to acquire distinctiveness by at least June of 2011. Much of the evidence discussed above, including testimony about the Plaintiff's business, promotional efforts, and reputation, also goes to the strength of the Plaintiff's mark. A reasonable jury could

have concluded that the Plaintiff's mark, though highly descriptive, is strong among the members of the relatively small market of prospective purchasers it targets.

### 8. Sufficiency of the Evidence

Here, there was ample compelling evidence of instances of actual confusion, and at least some evidence in favor of finding a likelihood of confusion with respect to each of the other seven *Pignons* factors. There was more than sufficient evidence for a reasonable jury to find that the Defendants' use of the name "The Inn at Brunswick Station" is likely to confuse an appreciable number of reasonably prudent people exercising ordinary care whose behavior affects the Plaintiff's business interests.

### CONCLUSION

For the reasons discussed above, there was sufficient evidence for a reasonable jury to conclude both that the Plaintiff's mark acquired distinctiveness before the Defendants began using the name "The Inn at Brunswick Station" and that there is a likelihood of confusion. Therefore, the Court **DENIES** the Defendants' motion for judgment notwithstanding the verdict, **APPROVES** the jury's verdict, and **ORDERS** judgment be entered in favor of the Plaintiff on Counts II and III in the amount of $10,000.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 4th day of February, 2014