# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| 165 PARK ROW, INC., <br> d/b/a THE BRUNSWICK INN, <br><br> Plaintiff, <br><br> v. <br><br> JHR DEVELOPMENT, LLC and <br> MAINE AND NOBLE, LLC, <br><br> Defendants. | Civil No. 2:12-cv-00106-NT |

## ORDER AND OPINION

Before the Court in this trademark infringement case are various issues not resolved during a three-day jury trial conducted in December of 2013, including: (1) the Plaintiff's and Defendants' competing requests that the Court rule in their favor with respect to Counts IV and V and the Defendants' counterclaim; Pl.'s Post-Trial Br. 1-3 (ECF No. 149), Defs.' Post-Trial Br. 1-3 (ECF No. 147); (2) the Plaintiff's request that the Court permanently enjoin the Defendants from continuing to use the name "The Inn at Brunswick Station," Pl.'s Post-Trial Br. 1, 3-10, Defs.' Post-Trial Br. 1-6; and (3) the Plaintiff's request that the Court grant declaratory judgment in its favor. Pl.'s Post-Trial Br. 2; Defs.' Post-Trial Br. 1-2. For the reasons stated below, the Court **ORDERS** judgment be entered in favor of the Plaintiff with respect to Counts IV and V and the Defendants' counterclaim, **GRANTS IN PART** the Plaintiff's request for a permanent injunction, and **DENIES** the Plaintiff's request for declaratory judgment.

## BACKGROUND

The Plaintiff operates a small inn (the "**Plaintiff's Inn**") in a historic building in Brunswick, Maine, under the name "The Brunswick Inn." In June 2011, the Defendants opened a larger inn (the "**Defendants' Inn**") in a newly constructed building nearby under the name "The Inn at Brunswick Station." On March 23, 2012, the Plaintiff filed an application with Maine's Secretary of State to register the name "The Brunswick Inn" as a state trademark.[1] Pl.'s Ex. 85. The Secretary of State granted the application on March 27, 2012. *Id.* On March 29, 2012, the Plaintiff filed this lawsuit. Pl.'s Compl. (ECF No. 1). The Defendants responded by answering the Plaintiff's claims and bringing a counterclaim seeking the cancellation of the Plaintiff's state trademark registration. Defs.' Answer to Am. Compl. & Countercl. (ECF No. 9).

The Plaintiff's First Amended Complaint includes five counts. Pl.'s First Am. Compl. (ECF No. 6). Count I seeks declaratory relief. *Id.* at 4-5. Count II states a trademark infringement claim under the common law of Maine and 10 M.R.S § 1529, a Maine statute which provides a cause of action for the holders of trademarks registered with the state. *Id.* at 5-6. Count III states a trademark infringement claim under 15 U.S.C. § 1125(a), a provision of the Lanham Act which provides a cause of action for the holders of trademarks that are not federally registered but are nonetheless entitled to trademark protection. *Id.* at 6-7. Count IV states a claim under 10 M.R.S. §§ 1212 and 1213, provisions of the Maine Deceptive

---

[1] Technically, the Plaintiff applied to register its name as a "service mark," a mark which designates services as opposed to goods.

Trade Practices Act, which provide a cause of action for individuals "likely to be damaged by a deceptive trade practice," 10 M.R.S. § 1213, including engaging in business behavior that "[c]auses likelihood of confusion or misunderstanding as to the source . . . of goods or services." 10 M.R.S. § 1212(1)(B); Pl.'s First. Am Compl. 7. Count V states a claim under 10 M.R.S. § 1530, Maine's anti-dilution statute, which provides a cause of action for the holders of trademarks registered with the state or otherwise valid under the common law of Maine. *Id.* at 7-8.

The Defendants brought their counterclaim under 10 M.R.S. § 1522, which prohibits Maine's Secretary of State from registering a mark that is "merely descriptive" or "primarily geographically descriptive" unless the mark has "become distinctive," and 10 M.R.S. § 1527, which requires Maine's Secretary of State to cancel a state trademark registration when "a court of competent jurisdiction shall find . . . [t]hat the registration was granted improperly."

A three-day trial was held in December of 2013. Two of the Plaintiff's five counts were submitted to the jury via a special verdict form: Count II, the Plaintiff's state trademark infringement claim, and Count III, the Plaintiff's Lanham Act claim.[2] Specifically, the jury was asked to return yes or no answers to the following questions:

1. Did the Plaintiff prove that the Plaintiff's mark, "The Brunswick Inn," acquired distinctiveness before the Defendants began using the name "The Inn at Brunswick Station"?

---

[2] In general, trademark claims brought under Maine law are treated the same as trademark claims brought under the Lanham Act. *Compare* 15 U.S.C. § 1125(a) *with* 10 M.R.S.A. § 1529; *see also* Pl.'s Trial Br. 4 n.1 (ECF No. 105); Defs.' Mot. for Directed Verdict 2 n.1 (ECF No. 135).

3

. . .

2. Did the Plaintiff prove that the Defendants used the name 'The Inn at Brunswick Station" in a manner likely to confuse an appreciable number of reasonably prudent people exercising ordinary care whose behavior affects the Plaintiff's business interests?

Special Verdict Form 1 (ECF No. 141). The jury answered "yes" to both questions, which amounted to a determination of liability in the Plaintiff's favor on Counts II and III.

The jury was also charged with determining four further issues: (1) what actual damages, if any, the Plaintiff was entitled to; (2) whether the Defendants and the Plaintiff are in direct competition; (3) if so, what portion of the Defendants' profits, if any, the Plaintiff was entitled to as a rough measure of its uncompensated lost sales; and (4) whether the Defendants infringed the Plaintiff's trademark willfully. The jury awarded the Plaintiff $10,000 in actual damages, determined that the Plaintiff and the Defendants are in direct competition but declined to award the Plaintiff any portion of the Defendants' profits, and decided that the Defendants had not willfully infringed the Plaintiff's trademark. Special Verdict Form 2-3.

The Defendants timely filed a motion seeking to overturn the jury's verdict under Federal Rule of Civil Procedure 50(b). Defs.' Mot. for J.N.O.V. (ECF No. 148). The Court denies that motion in another order issued today. Order on Defs.' Mot. for J.N.O.V. (ECF No. 151).

Both parties also filed post-trial briefs dealing with the remaining counts and requests for relief. In its brief, the Plaintiff requested that a finding be entered in

4

its favor with respect to Counts IV, V, and the Defendants' counterclaim. Pl.'s Post-Trial Br. 1-3. The Plaintiff also requested that the Court issue a permanent injunction requiring the Defendants to cease using their name immediately and to turn over any goods or marketing materials bearing the Defendants' name to the Plaintiff's attorney within thirty days. Pl.'s Post-Trial Br. 3-10; Pl.'s Proposed J. & Final Inj. 2 (ECF No. 149-1). Finally, the Plaintiff requested that the Court issue a declaratory judgment that the Plaintiff "is the senior user and owner of exclusive rights in the mark THE BRUNSWICK INN." Pl.'s Post-Trial Br. 2. The Defendants' brief requested a finding be entered in the Defendants' favor with respect to Counts IV, V and their counterclaim, on the same basis asserted in their motion for judgment notwithstanding the verdict. Defs.' Post-Trial Br. 1-2. In the alternative, the Defendants requested that any permanent injunction issued by the Court allow them six months to adopt a new name before taking effect. Defs.' Post-Trial Br. 5. The Defendants also requested that they be allowed to continue using the domain name "innatbrunswickstation.com" notwithstanding any injunction, so that users who enter that domain name into their browsers or search engines can be redirected to the Defendants' new website. Defs.' Post-Trial Br. 6.

## REMAINING CLAIMS

### I. Counts IV and V: Maine Deceptive Trade Practices Act Claim and Maine Dilution Claim

Where some claims in a case are tried to a jury and other claims tried to the court, the court is "normally bound by earlier jury findings in the same case on common issues." *Troy v. Bay State Computer Grp., Inc.*, 141 F.3d 378, 382-83 (1st

5

Cir. 1998). Here, the jury's findings with respect to the first two questions on the special verdict form completely resolve Counts IV and V in the Plaintiff's favor.[3] The Court therefore orders the Clerk of Court to enter judgment in favor of the Plaintiff with respect to both of those counts.

## II. The Defendants' Counterclaim Seeking Cancellation of Plaintiff's State Trademark Registration

The Defendants' counterclaim, seeking a declaration that Maine's Secretary of State improperly registered the Plaintiff's mark, is based on two provisions in the chapter of the Maine Revised Statutes dealing with state trademark law. The first provision, 10 M.R.S. § 1522, is titled "Registration." It provides, in relevant part, that "[a] mark shall not be registered if" it is "merely descriptive . . . or . . . is primarily geographically descriptive . . . , provided that nothing in this paragraph may prevent the registration of a mark . . . that has become distinctive of the applicant's goods or services." 10 M.R.S. § 1522(1)(E). In other words, the state may not register a descriptive trademark until and unless it has acquired distinctiveness. The second provision, 10 M.R.S. § 1527, is titled "Cancellation . . . ." It provides, in relevant part, that "[t]he Secretary of State shall cancel from the register . . . [a]ny registration which a court of competent jurisdiction shall find . . . was granted improperly." 10 M.R.S. § 1527(1)(D)(3).

---

[3] The parties have treated Count IV, the Plaintiff's Maine Deceptive Trade Practices Act claim under 10 M.R.S. § 1212, and Count V, the Plaintiff's "dilution by confusion" claim under 10 M.R.S. § 1530, Maine's anti-dilution statute, as identical to the Plaintiff's Lanham Act claim. *See, e.g.,* Pl.'s Post-Trial Br. 2-3; Defs.' Post-Trial Br. 2. The Court follows suit. *See Butcher Co. v. Bouthot*, 124 F. Supp. 2d 750, 762 (D. Me. 2001) (regarding 10 M.R.S § 1212); *Best Flavors, Inc. v. Mystic River Brewing Co.*, 886 F. Supp. 908, 918 (D. Me. 1995) (regarding "dilution by confusion").

6

Here, the mark in question, "The Brunswick Inn," is "merely descriptive." *See W.R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co.*, 62 A. 499, 503-504 (Me. 1905) (holding that a "geographical name . . . affixed" to a generic term for a product is "merely descriptive," not inherently distinctive). Accordingly, it is entitled to registration under Maine law only if it acquired distinctiveness as of the end of March of 2012, when the Plaintiff applied for and received its registration.

The Court is bound by the jury's determination that the Plaintiff's mark, "The Brunswick Inn," acquired distinctiveness before the Defendants began using their competing mark, "The Inn at Brunswick Station." *Troy*, 141 F.3d at 382. The evidence presented at trial indicates the Defendants began using their mark by at least June of 2011. There is no evidence that the Plaintiff's mark somehow lost its previously acquired distinctiveness between that time and March of 2012. In fact, the evidence is to the contrary. During that interval, the Plaintiff continued to promote its mark and grow its business. Accordingly, there are no substantive grounds to rule that Maine improperly registered the Plaintiff's mark.

The Defendants also urge this Court to find that the state registration was improperly granted because the Secretary of State merely rubber-stamped the Plaintiff's application, regardless of it merits. The problem with this theory is that the Defendants, who bear the burden of proof on their counterclaim, failed to join the state or call anyone from the Secretary of State's office to testify about the process it used to reach its determination. Therefore, the Court would have to

speculate in order to conclude that the Secretary of State improperly granted the registration. For these reasons, the Defendants' counterclaim fails.

**FURTHER RELIEF**

**I.     Permanent Injunctive Relief**

Under the Lanham Act, the Court may permanently enjoin a party found liable for trademark infringement where the "principles of equity" warrant. 15 U.S.C. § 1116 (providing that courts with jurisdiction to hear Lanham Act cases "shall have power to grant injunctions, according to the principles of equity"); *Purolator, Inc. v. EFRA Distribs., Inc.*, 687 F.2d 554, 561-62 (1st Cir. 1982) (upholding grant of permanent injunctive relief in claim brought under 15 U.S.C. § 1125(a)). Under equitable principles applied in federal court, a permanent injunction is justified only if the plaintiff demonstrates: (1) "actual success on the merits of the claim"; (2) "that [the plaintiff] would suffer irreparable injury if injunctive relief were not issued"; (3) "that such injury outweighs any harm that would stem from granting injunctive relief"; and (4) "that the public interest weighs in [the plaintiff's] favor." *Largess v. Supreme Judicial Court of Mass.*, 373 F.3d 219, 223 n.2 (1st Cir. 2004) (internal citations and quotation marks omitted). "The decision whether to grant relief is based on a balancing of the different factors." *Id.*

Where an injunction is warranted, the court "must closely tailor [it] to the harm that [it] address[es]." *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 40 (1st Cir. 2002) (internal citations and quotation marks omitted). Any injunction "should be no more burdensome to the defendant than necessary to

provide complete relief to the plaintiff[ ]." *Id. (*quoting *Califano v. Yamasaki,* 442 U.S. 682 (1979)). For instance, a court may temporarily delay implementing an injunction to allow the infringer time to adopt a new mark. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32, 42 (1st Cir. 2006) (affirming order allowing appliance maker 12-month period to sell existing stock bearing infringing mark); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:3 (4th ed. 2013).

## A.  Actual Success on the Merits

It is clear that the Plaintiff achieved "actual success on the merits" on its Lanham Act claim.

## B.  Irreparable Injury

Regarding the irreparable injury factor, existing First Circuit precedent creates a presumption of irreparable harm where the defendant infringed another's trademark. *Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 3 (1st Cir. 1997); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("[I]irreparable harm flows from an unlawful trademark infringement as a matter of law."). However, a recent patent law case decided by the Supreme Court, *eBay, Inc. v. MercExchange*, L.L.C., 547 U.S. 388 (2006), calls the propriety of that presumption into question. *eBay, Inc.* 547 U.S. at 393 (rejecting presumption that permanent injunction should issue when patent infringement is established); *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44 (1st Cir. 2013) (noting that the Supreme Court's *eBay, Inc.* decision "threaten[s] the continuing viability of [the] presumption" of irreparable harm in trademark cases). Even if the presumption no longer applies, various rationales may support a finding

9

of irreparable injury in a trademark infringement case, such as: (1) the difficulty of quantifying the continuing harm caused by trademark infringement, *see Societe Des Produits Nestle*, 982 F.2d at 640; (2) the trademark holder's "loss of control" over its "reputation and goodwill," even absent any quantifiable economic harm, *see* 5 McCarthy § 30:2 (4th ed. 2013); and (3) the danger that the trademark holder will have to file additional lawsuits in the future to vindicate its rights. *See Greene v. Ablon*, Civil Action No. 09-10937-DJC, 2013 WL 4714344, at *2 (D. Mass. Aug. 28, 2013).

If the First Circuit's presumption of irreparable injury survived the Supreme Court's decision in *eBay, Inc.*, then the irreparable injury factor is satisfied on the basis of the jury's decision that the Defendants infringed the Plaintiff's valid trademark. However, even if *eBay, Inc.* overturned the presumption of irreparable harm, the Court independently finds that the Plaintiff would suffer an irreparable injury if no permanent injunction issued. Three of the Plaintiff's witnesses—Eileen Hornor, Wendy Flynn, and Alane Callahan—testified that instances of confusion persist. It is difficult to measure how many sales the Plaintiff might lose because of this confusion, but the evidence suggests it would be significant. For instance, the Plaintiff's witnesses testified about numerous incidents where an individual who was familiar with the Plaintiff's Inn recommended "The Brunswick Inn" to a family member or friend, only to have that person accidentally book a room at the Defendants' Inn instead. Furthermore, if the Court does not enjoin the Defendants, the Plaintiff will continue to be unable to retain control over its goodwill and

reputation and to share consumers' blame and approbation when the similarity between the Plaintiff's and Defendants' names causes time-wasting mix-ups. Finally, without a permanent injunction, the Plaintiff will likely be forced to file more lawsuits in the future to vindicate its rights.

C. **Balancing the Hardships**

Regarding the balancing of the hardships factor, the loss of profits a defendant might suffer because it has built up its business around infringing another's trademark "merits little equitable consideration." *See Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (internal citations and quotation marks omitted) (copyright case).

Richard Martin, the general manager of the Defendants' Inn, testified at trial that the Defendants would incur significant costs if they are required to change the name of their business, including the expense of procuring new signs, employee uniforms, and promotional materials. Martin also testified that a name change would confuse the tens or hundreds of thousands of people the Defendants' marketing efforts have already reached.

However, these likely costs must be understood in context. The testimony of Hilary Rockett, the developer of the Defendants' Inn, establishes that the Defendants were aware of the existence of the Plaintiff's Inn when they chose the name for their business. Rockett himself had stayed at the Plaintiff's Inn many times. Futhermore, the testimony of Michael Lyne, the project manager for the construction of the Defendants' Inn, establishes that he likely warned the Defendants during the naming process that customers might confuse the name "The

Inn at Brunswick Station" with the name "The Brunswick Inn." Though the Defendants did not willfully infringe the Plaintiff's trademark, they ran a significant risk of consumer confusion by electing a name so similar to the Plaintiff's. In short, the hardships the Defendants point to are hardships of their own making. If the Defendants had not chosen a name so similar to the Plaintiff's, they would not now be facing the possibility of having to incur the costs of changing their name. While the Court considers these costs in tailoring appropriate equitable relief, they do not preclude granting the permanent injunction the Plaintiff requests.

### D. The Public Interest

Regarding the public interest factor, the public is generally served by reducing consumer confusion. *Mercado-Salinas v. Bart Enters. Int'l, Ltd.*, 671 F.3d 12, 24 (1st Cir. 2011); *see also Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 97 (D. Mass. 1996) ("In . . . trademark cases, the public interest almost always favors the granting of otherwise appropriate injunctions.")

The Plaintiff's evidence makes clear that many guests have booked reservations at the wrong hotel, arrived at the wrong building after long trips, been forced to wait for taxis that went to the wrong location to pick them up, and suffered various other harms and annoyances due to the confusion engendered by the Defendants' infringing behavior. Given the similarity between the names of the businesses and their close proximity to one another, it is likely that similar incidents would persist. The evidence suggests that an injunction would reduce consumer confusion and thereby serve the public interest.

### E. Balancing the Factors

Here, the balance of the above equitable factors weighs in favor of granting a permanent injunction under the authority of the Lanham Act,[4] although the Court agrees that the Defendants should be allowed some flexibility in making the transition to a new name. In the injunction entered in the conclusion of this order, the Court attempts to strike the appropriate balance.

## II. Declaratory Judgment

The Declaratory Judgment Act allows district courts discretion to grant declaratory relief. 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction . . . , any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration . . . ." (emphasis added)). As the Supreme Court explained in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Act "create[s] an opportunity, rather than a duty" on the part of the court. *Wilton*, 515 U.S. at 288. If declaratory judgment "will serve no useful purpose," or if "considerations of practicality and wise judicial administration" advise against it, the court may choose, in its discretion, not to grant declaratory judgment. *Id.*

Here, the Plaintiff seeks a declaration that "it is the senior user and owner of exclusive rights in the mark THE BRUNSWICK INN." Pl.'s Post-Trial Br. 2. The jury's order and this order make clear that the "The Brunswick Inn" is a legally enforceable trademark in which the Plaintiff's rights are superior to those of the

---

[4] As 15 U.S.C. § 1116 and 15 U.S.C. § 1125(a) entitle the Plaintiff to a permanent injunction, the Court need not consider under what circumstances Maine law would justify an injunction.

13

Defendants. No additional decree from the Court is necessary on that point. Furthermore, the Court heard no evidence concerning whether the Plaintiff is the owner of "exclusive" rights in the mark "The Brunswick Inn." It is at least theoretically possible that a third party not involved in this case also has valid rights to the mark, so a decree as to the exclusivity of the Plaintiff's rights would not be appropriate. For these reasons, the Court denies the Plaintiff's request for declaratory judgment.

## CONCLUSION

For the reasons discussed above, the Court **ORDERS** judgment be entered in favor of the Plaintiff with respect to Counts IV and V and the Defendants' counterclaim, **DENIES** the Plaintiff's request for declaratory judgment, and **ENJOINS** the Defendants as follows:

1) No later than 5:00 p.m. EST on April 4, 2014, the Defendants shall permanently cease using the name "The Inn at Brunswick Station" or any similar name which uses both the word "Brunswick" and the word "Inn," except as provided in Paragraph 2 of this injunction.

2) The Defendants may continue to maintain the "innatbrunswickstation.com" domain name until 5:00 p.m. EST on February 4, 2015, but only in a manner that automatically redirects users who enter that domain name into their web browsers to a new non-infringing website with a different, non-infringing domain name.

SO ORDERED.

                                            /s/ Nancy Torresen
                                            United States District Judge

Dated this 4th day of February, 2014